Central Passenger Railway Company v. Kuhn.

CASE 75—PETITION ORDINARY—JANUARY 19.

# Central Passenger Railway Company v. Kuhn.

# Lou. & Nash. R. R. Co. v. Same.

APPEALS FROM JEFFERSON COURT OF COMMON PLEAS.

1. RAILROADS—FLAGMEN.—It was negligence of the most flagrant character in a railroad company not to have some one to give notice of the approach of trains at a point near a large city where its road crossed a public thoroughfare, and where street cars crossed its track many times during the day and until a late hour at night. A flagman during the day merely was not sufficient; there should have been a flagman there at 9 o'clock at night.

2. CONCURRENT NEGLIGENCE—PRESUMPTION OF NEGLIGENCE.—Where a passenger on a train or a street car is injured by reason of a defect in the road, cars or machinery, or by a want of care or diligence in those employed, or by any other thing which the company can or ought to control, a presumption of negligence upon the part of the company arises, and in an action against the company the burden is upon it to rebut this presumption.

A passenger upon a horse-car was injured by reason of a collision of the car with a steam engine at a railroad crossing. In this action against both the horse-car company and the steam-car company, charging concurrent negligence, Held—That the burden was upon the horse-car company to show proper care, and upon the plaintiff to show negligence upon the part of the steam-car company.

3. DUTY OF DRIVER OF STREET CAR.—The court properly refused to instruct the jury "that it was not the duty of the driver of the street car to stop his car and go ahead on foot to the crossing to see if a train was approaching, unless he had reasonable ground to believe a train was approaching." The view of the railroad being obstructed, and there being no conductor or other person on the car to exercise this vigilance, the probability of danger imposed this duty on the driver.

4. EVIDENCE—CITY ORDINANCE.—The horse-car company cannot complain of the exclusion from the jury of an ordinance of the city requiring steam companies to have a flagman at the crossing. Even if the company had notice of the ordinance, which does not appear, or was required to take notice, its negligence does not excuse the negligence of the horse-car company.

5. PREJUDICIAL ERROR.—The defendants were not prejudiced by the

Central Passenger Railway Company v. Kuhn.

action of the court in permitting the plaintiff to testify that his family consisted of "a wife and three children," as the instructions guided the jury plainly as to the compensation or damages the plaintiff was entitled to recover, and it is apparent that they confined themselves to the instructions in assessing damages, and were not influenced by the testimony complained of.

6. MEASURE OF DAMAGES.—This action was instituted to recover for the gross neglect of the two defendants, and no special damage was alleged other than the fact of the injury, the pain and suffering of the plaintiff, his expenses, loss of time and permanent injury. The jury were instructed that if the verdict was for plaintiff they should assess such damages, within the amount claimed, as would reasonably compensate him for his loss of time, necessary expenditures, and for permanent injury or disability, if any, and for the injury sustained by him in his bodily and mental suffering, if any there was, resulting directly from said injuries. The court also propounded this special interrogatory: "What sum in damages will reasonably compensate the plaintiff for the injuries sustained by him?" To which the jury responded: "Five thousand dollars." *Held*—That the jury were properly instructed as to the measure of damages.

7. JOINT TRESPASSERS—ASSESSMENT OF DAMAGES.—The act of 1839, which provides that "in actions of trespass it shall be lawful for the jury to assess several or joint damages against the several defendants; and when the jury finds several damages, the judgment shall be in favor of the plaintiff against each defendant for the several damages, and a joint judgment for costs," is still in force, as it has not been repealed, expressly or by implication, by either the Revised or General Statutes, or by the Code of Practice. And this statute affords a remedy against all joint trespassers, with the right on the part of the jury to punish each wrong-doer to the extent of his participation in the wrongful act, and if one is the more guilty than the other, to punish him the more severely.

In this action, the jury, by their special findings, fixed the damages at five thousand dollars, and required the one defendant (the steam-railroad company) to pay of that amount two thousand dollars, and the other (the street-car company) to pay three thousand dollars. *Held*—That the jury had the right to thus apportion the damages; but, even if they had not, the defendants were not prejudiced, as otherwise there would have been a joint judgment against both for five thousand dollars; the whole of which might have been recovered of one with no right of contribution against the other.

BARNETT, NOBLE & BARNETT AND WM. LINDSAY FOR APPELLANTS.

1. The act of February 14, 1839, authorizing separate verdicts against

joint trespassers, not being re-enacted in General Statutes, is repealed.

2. That statute, if in force, does not authorize separate verdicts for different sums against joint trespassers. (1 J. J. M., 361, Cox v. Cook; 1 Bibb, 439, Rochester v. Anderson; Sutherland on Damages, vol. 1, pp. 823-4.)

3. Taking judgment on the larger verdict against the Central Passenger Co. was a waiver of the right to take judgment against the L. & N. R. R. C. for the smaller sum.    (1 Bibb, 441, Rochester v. Anderson; 3 Monroe, 136, Stone & Waters v. Matherly; 1 J. J. M., 360, Cox v. Cook.)

4. It was error to admit evidence that the person injured had a family—being an action not for punitive but for compensatory damages. (Thompson on Negligence, vol. 2, p. 1263; 74 Ill., 343, P., Ft. W. & C. Ry. v. Powers; 65 Ill., 160, City of Chicago v. O'Brannon.)

## BROWN, HUMPHREY & DAVIE for CENTRAL PASSENGER RAILWAY COMPANY.

1. It was error in the court below to instruct the jury that the burden was on the street car company to prove there was no negligence; while it did not put any such burden on the steam railroad company.   The burden should have been put on the plaintiff, Kuhn, or on both railroads alike.   (Wood on Railways, vol. 2, pages 1095 to 1100.)

2. The rule (stated in Smith v. Louisville and Portland Railroad Company, 2 Duvall, 556), that where an accident happens to a passenger by reason of the carriage or car breaking down or running off the track, it is *prima facie* evidence of negligence, and throws the burden on the company, only applies where the accident is of such a nature as to show that the negligence, if it existed, was confined to the carrier himself; and does not apply to cases where the car was knocked off the track by an intervening outside force.   (Curtis v. Rochester R. R., 18 New York, 534; Woods on Railways, pages 1095 to 1098.)

3. The court below erred in instructing that the obstructions to the view erected by the steam railroad company at the crossing imposed a greater duty upon the street car driver; and in refusing to instruct that it was not the duty of the street car driver to leave his car and go ahead to the crossing and look up and down the steam railroad track for trains.   To keep a careful lookout from his car was all that the law required of the driver; and if the obstructions were such that such lookout would not avail, the liability is not on the street car company but on the steam railroad company which wrongfully placed the obstructions there.   (McKay v. New York Central R. R., 35 New York, 75; Bilbee v. R. R. Co., 114 English Com. Law Reports, 584; Oliff v. Midland Railway, Law Reports, 5 Exchequer, 265.)

Central Passenger Railway Company v. Kuhn.

4. There is no law requiring a street car to have a conductor; nor does necessity, safety or custom require it; more than three-fourths of the street cars in the United States do not have conductors; and the use of conductors would necessarily increase the cost and lessen the number of cars and other public conveniences. (Cross Town R. R. v. Brooklyn, 37 Hun. (N. Y.), 415; Hestonville R. R. Co. v. Connell, 88 Pa. St., 523; Emerson v. Peteler, 35 Michigan, 481; Bishop v. Union R. R., 14 Rhode Island, 320; 44 Pa. St., 320; 101 Pa. St., 258; 1 Abbott's New Cases (N. Y.), 433; Citizens R. R. v. Carey, 56 Indiana, 396.)

5. The court below erred in instructing that the street car company was responsible for the highest and utmost degree of skill and care, while the steam railroad was only held to owe ordinary care. The steam car train, being far the most dangerous, should not be held to the lower degree of care. (Woods on Railroads, vol. 2, page 1074; Smith v. Portland R. R., 2 Duvall, 556, 558; Rhorer on Railroads, vol. 2, 1437; 51 N. Y., 497; 18 Ohio St., 255; 22 Ohio St., 19.)

6. It was error to permit the plaintiff, over our objection, to prove that he had a wife and three small children, and thereby arouse the jury's sympathies, enhance the damages, and indirectly obtain damages for the wife and children. (Thompson on Negligence, vol. 2, page 1263; Rhorer on Railroads, vol. 2, page 1099; Sedgwick on Damages, vol. 2, page 641; City Chicago v. O'Brennan, 65 Illinois, 163; Pennsylvania Co. v. Roy, 102 U. S., 451; Railway Company v. Powers, 74 Ill., 341.)

7. It was error to exclude from the jury the city ordinance which required the steam railroad company to keep a flagman at the railroad crossing. (Dolfinger v. Fishback, 12 Bush, 475.)

8. There being no willful injury and no circumstances of aggravation, and no case for exemplary or punitive damages, the court erred in not limiting the damages to compensation for the loss of power to earn money; and in allowing damages vaguely for " any mental impairment," irrespective of its effect upon plaintiff's capacity to earn a living. (L. C. & L. R. R. v. Case, 9 Bush, 736.)

9. This being a case of alleged joint negligence on the part of the two railroad companies, the judgment should have been joint; and it was error in the court to require a verdict and enter judgment for different sums against each of the two, thus measuring, apportioning and dividing the joint wrong. The damages can not be severed and assessed in different amounts against the different joint tort-feasors. (Sutherland on Damages, vol. 1, 823, 824; Haden's Case, 11 Coke's Reports; Hill v. Goodchild, 5th Burrows, 2790; Stone v. Matherly, 3 Mon., 136; Rochester v. Anderson, 1 Bibb, 439; Dougherty v. Dorsey, 4 Bibb, 208; Cox v. Cox, 1 J. J. Mar., 361.)

10. The statute of 1839, allowing the jury to sever the damages between

different defendants, only applied to cases of trespass, and not to actions for personal injuries. (Henry v. Sennett, 3 Ben. Mon., 312.) And that statute was not re-enacted in the Revised or General Statutes, and is no longer in force. (Broadus v. Broadus, 10 Bush, 808; Grigsby v. Barr, 14 Bush, 339.)

O'NEAL, JACKSON & PHELPS AND KOHN & BARKER FOR APPELLEE.

1. The condition of appellee's family was a proper element to be considered in estimating compensatory damages. (7 Bush, 238, L., C. & L. R. R. Co. v. Mahoney; Sedgwick on Damages, 465; Sutherland on Damages, vol. 3, p. 261; Redfield on Negligence, 606.)
2. It was not error to exclude from the consideration of the jury an ordinance requiring the railroad company to have flagmen at railroad crossing. (12 Bush, 474, Dolfinger v. Fishback.)
3. Central Passenger Railroad Company having admitted that appellee was injured while a passenger on its car, the burden of proof was upon that company to show that the injury was not caused by its negligence. (2 Duvall, 556, L. & P. R. R. Co. v. Smith.)
4. A carrier of passengers as to them must use the utmost care and skill that prudent persons are accustomed to use under like circumstances. (80 Ky., 420, Louisville City R. R. Co. v. Weams.)
5. When the view is obstructed at a railroad crossing, the same degree of care is required of those in charge of a train and one traveling to cross the track. (79 Ky., 449, L., C. & L. R. R. Co. v. Goetz, Administrator; 5 Otto, 163, Cont. Imp. Co. v. Stead.)
6. It was error to instruct the jury that the street car company should be held to the highest degree of care and skill, and the steam railroad company only to ordinary care. (Wood's Railroad Law, vol. 2, page 1074; 2 Duvall, 556, Smith v. Portland R. R. Co.)
7. Damages in actions where death has not ensued is confined to expense of care, value of time lost, compensation for physical and mental suffering, and for permanent reduction of power to earn money. (9 Bush, 736, L., C. & L. R. R. Co. v. Case.)
8. It was error to render separate judgments against the two companies. (Sutherland on Damages, vol. 1, 823; 3 Monroe, 136, Stone v. Matherly; 1 Bibb, 439, Rochester v. Anderson.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellee, Christ Kuhn, instituted the present action in the Jefferson Court of Common Pleas against the Central Passenger Railroad Company and the Louisville and Nashville Railroad Company, in which

it is alleged that when a passenger on the cars of the Passenger Railroad Company he was injured by being thrown out of the car by reason of a collision between the cars of that company and those of the Louisville and Nashville Railroad Company, caused by the joint negligence of the employes of each defendant.

The accident occurred in the eastern part of the city at the corner of Baxter avenue, at a point where the city railway cars crossed the track of the Louisville and Nashville Railroad. There was a verdict assessing the damages at five thousand dollars, and then a several finding by which the city railway company was required to pay three thousand dollars of the damages and the Louisville and Nashville Railroad Company two thousand dollars. Both of the railroad companies have appealed.

The plaintiff was injured about nine o'clock at night, in July, 1884, the car in which he was riding being struck by the engine of the Louisville and Nashville Railroad Company in the attempt of the passenger car to cross its track.

The question of negligence was properly submitted to the jury by special interrogatories, and by the instructions given the jury finding that the injury was caused by the concurrent negligence of the two companies.

It is apparent from the testimony that each company was guilty of the grossest neglect, and liable to the appellee in damages for the injury sustained by him.

It appears from the evidence that where the one track crossed the other was a public throughfare, used constantly by those passing in and out of the city, with

street cars crossing the track of the steam railroad company many times during the day, and until a late hour at night. That the Louisville and Nashville Railroad Company kept a flagman at the crossing during the day to warn those passing of the approach of its trains, but at night no flagman was required to remain, and those passing this dangerous crossing, whether in street cars or other modes of conveyance, left to provide for their own safety, and to risk the danger of being run over by constantly passing trains, with no other protection than their own knowledge as to the time the trains would pass, or their vigilance in noticing the trains approach. No bars or gates had even been erected, and the trains running by steam day and night over the crossing, with a dense population on each side of the track, left to risk all the danger that was constantly menacing them at this particular point, and at a time when a vigilant flagman was most needed. Buildings were also located at or near the track, so as to obstruct the view of those crossing when looking in the direction this train approached on the night of the accident. Such a movement of railroad trains in the midst of a dense population, constantly passing over its track, without any one to give notice of the train's approach, was negligence of the most flagrant character.

As to the Central Passenger Company, it is manifest that its driver was unfitted for his employment. That he took no pains to satisfy himself of the approach of the train, when others less interested than himself, and not on his cars, saw its approach in time for him to have saved himself, if he had exercised even the slightest care. Besides, when he discovered the train's ap-

proach he attempted to cross the track in front of it, when by the exercise of the slightest care he might have avoided all danger. It is, therefore, plain that the injury complained of resulted from the negligence of both companies. It is proper to notice first some of the objections made by counsel for the street car company during the progress of the trial, and now complained of as error to its prejudice.

It is argued that the court below erred in adjudging that the burden of proof was on the street car company (the collision being admitted) to show that the injury was not caused by its neglect, and at the same time holding that no such rule could apply to the Louisville and Nashville Railroad Company, the other defendant.

This record shows that the Central Passenger Company was willing to assume the burden, and asked that it be allowed to first introduce its evidence, and the motion was overruled. The plaintiff was then required to make out his case of negligence against both defendants ; but when the evidence was all in, the court permitted counsel for the Passenger Company to conclude the argument, and it, therefore, seems to us that if either party was prejudiced by this action of the court, it was the plaintiff and not the defendant.

The rule adopted in Smith v. Louisville and Portland Railroad Company, 2 Duvall, 556, places the burden in this case on the company, and while that case may fail to distinguish properly the class of accidents to the passenger in which the burden is on the carrier, from those where the burden is on the plaintiff, still in this case one of the grounds of complaint, or the negligence complained of, is the want of care on the

part of the driver, and his want of fitness for the
position given him.

Mr. Cooley on Torts, referring to a Pennsylvania case
(Laing v. Colder, 8 Penn. St., 479 ; Sullivan v. Phila-
delphia, 30 Penn. St., 234), says: "*Prima facie*, where
a passenger being carried on a train is injured without
fault of his own, there is a legal presumption of negli-
gence, casting upon the carrier the onus of disproving
it. This is the rule when the injury is caused by a
defect in the road, cars or machinery, or by a want of
diligence or care in those employed, or by any other
thing which the company can or ought to control, as a
part of its duty to carry the passengers safely ; but this
rule of evidence is not conclusive." (Cooley on Torts,
page 663.) The complaint in this case was the want of
diligence in the driver, and the law will presume neg-
lect from the mere fact of the injury, and the burden
is on the defendant, who may show that the injury ori-
ginated from causes the driver could not prevent. The
passenger commits himself to the custody and control
of the carrier, and if the car breaks, or the car, while
controlled by the driver, should strike an obstruction,
as a wall or an embankment, the presumption of negli-
gence arises, and must be overcome by the carrier on
the complaint of the passenger injured by the accident.
The accident may have been caused by the other de-
fendant; but if so, it devolved on the company in
charge of the passenger to show it. And further, says
Mr. Cooley : "Suppose a railway train thrown from a
track from some cause not apparent, and the passen-
gers are injured, would it be reasonable to put an
injured person to the necessity of discovering and

pointing out the cause, and tracing the fault to the company before he could recover; or may he, who has intrusted his person and his life to the control of the company, * * rely on the injury itself as entitling him to redress, and leave to the defense the task of presenting exculpatory evidence." A felon may have placed obstructions on the track, or caused the accident in a manner that no vigilance could guard against; and if so, it may be easily shown by the company. This rule placing the burden on the company is in accord with the doctrine that a common carrier of passengers must exercise the highest degree of care and diligence to prevent injury. Such care as a reasonable and cautious man would use under the circumstances is the diligence required.

This rule, says Hilliard, applies to the vehicle, the horses, the harness, the skill, caution and sobriety of the driver. (2 Hilliard on Torts, page 587.)

This court, in the case of the Louisville and Nashville Railroad Company v. Ritter, 85 Ky., 368, recognized the same doctrine, both as to the presumption of negligence and the care required of the carrier.

This case is attempted to be distinguished from that of the Railroad v. Ritter's Administrator, and that class of cases, and cases where the accident, the result of the neglect, might have been caused by the act of a stranger. We see no reason for the distinction. The negligence complained of is that of the company's driver, and that another contributed to the result can make no difference. If the steam railroad company had not been sued, it would have been a case directly against the other defendant for the negligence of its driver.

Where the direct cause of the injury results from the act of another over whom the carrier has no control, the burden is on the plaintiff, as when the injury is caused by an obstruction placed on the track of the road by a trespasser, and the alleged negligence is the failure of the company to remove the obstruction within a reasonable time, thereby causing the injury. We decline to follow the case of Curtis v. Rochester, 18 New York, 534.

Another objection is in regard to the fifth instruction given by the court to the jury, to the effect that when the view of the railroad is obstructed, that on approaching the crossing in order to avoid injury, the exercise of greater caution is required by those approaching, and those in charge of the train, than when the view is clear and unobstructed. The defense asked the court to modify this instruction, or to define the degree of care required in such a case by telling the jury "that it was not the duty of the driver of the street car company to stop his train and go ahead on foot to the crossing to see if a train was approaching, unless he had reasonable grounds to believe a train was approaching." This was refused and properly, because the court could not, as a matter of law, adjudge that such caution could be dispensed with; and as there was no conductor or other person on the car to exercise this vigilance, the probability of danger imposed this duty on the driver. While a conductor in addition to the driver may not be required on a street car, still, at such a crossing a force sufficient should be employed to avoid danger to the passengers.

It was evidently neglect on the part of the steam rail-
way company, under the circumstances, in failing to
provide for the safety of their crossing by removing the
obstruction, or in having gates or bars or a flagman to
prevent those crossing from being injured by its trains;
but the failure to do this did not relieve the street rail-
way company from the negligence of its employes, and,
therefore, instruction No. 1 was properly refused; and
for the additional reason that instructions were given
as to the degree of diligence required of the steam rail-
road company.    This is not an action by the one com-
pany against the other, nor is the negligence of the
street car company's driver the negligence of the pas-
senger.    The passenger is charging neglect against both.
There is certainly a higher degree of care required of
a carrier for the security and safety of its passengers,
than for the security of those not on its train, and,
therefore, the distinction between the instructions given
for the plaintiff as against the defendant, in whose care
the plaintiff was, and as against the steam car company
for its concurrent negligence.    The doctrine with refer-
ence to injuries to those crossing the track of a railway,
where the right to cross exists, is, that the company
must use such reasonable care and precaution as ordi-
nary prudence would indicate.    This vigilance and
care must be greater at crossings in a populous town
or city than at ordinary crossings in the country; so
what is reasonable care and prudence must depend
on the facts of each case.    In a crossing within a city,
or where the travel is great, reasonable care would
require a flagman constantly at the crossing, or gates
or bars, so as to prevent injury; but such care would

not be required in a crossing in the country where but few persons passed each day. The usual signal, such as ringing the bell and blowing the whistle, would be sufficient. This is the general rule laid down by all the works on negligence. (Thompson on Negligence, page 417; Lou., Cin. & Lex. R. R. Co. v. Goetz's Administrator, 79 Ky., 442.)

The court excluded from the jury the ordinance of the city of Louisville requiring the steam railroad company to have a flagman at this crossing. It did not appear that the company had notice of the ordinance, and if required to take notice, we can not well see how the negligence of the steam railroad company could excuse the neglect of the co-defendant causing this injury. That they were both guilty of neglect is clearly shown, and there is no pretense that the street car company supposed that this ordinance had been complied with.

We proceed now to consider the objections made by both defendants, to the judgment below. During the progress of the trial the appellee, while being examined as a witness, was asked the question: What family have you? The response was, a wife and three children. Objections were interposed to the question by the defendants and overruled. This action was instituted to recover for the gross neglect of the two defendants, and no special damage was alleged other than the fact of the injury, the pain and suffering of the plaintiff, his expenses, loss of time and permanent injury.

The case was tried in the court below as one for compensation only, and whether under the proof and aver-

ments of the petition, his condition with reference to the support of his family should have been embodied in an instruction as one of the elements of damage, is not necessary to be determined. The case was not tried on that theory, and no such instruction given. The court told the jury that if the verdict was for the plaintiff, they should assess such damages, within the amount claimed, as will reasonably compensate him for his loss of time, necessary expenditures, and for permanent disability or injury, if such be the result, and for the injury sustained by him in his bodily and mental suffering, if any there was, resulting directly from said injuries. This instruction guided the jury plainly as to the compensation or damages the plaintiff was entitled to receive. They were not misled, and doubtless not influenced, by the mere response of the witness to the question that he had a wife and three children.

The cases referred to as rendering such testimony incompetent, are where the evidence was excluded, the plaintiff insisting that it was an element of damage, or where the court had permitted the jury to consider it as an element of damage in cases where no special damage to that effect was alleged or punitive damages asked.

Besides the general instruction as to the measure of damages, this special interrogatory was propounded to the jury by the court: " What sum in damages will reasonably compensate the plaintiff for the injuries sustained by him." The response by the jury was: " We say five thousand dollars." So we think it is apparent that the jury confined their consideration as to the

measure of damages to the general instruction given
and the special interrogatory propounded by the court.
It is argued, however, that the character of the testi-
mony with reference to the injury inflicted and the
damages awarded shows that the jury, in fixing the
damages, was not confined to the instructions given.

The principal surgeon, who dressed the wound, says
that it was on the head—a fracture of the outer plate
of the skull. He regarded it as dangerous, and still
regards it as such, likely to result in epilepsy or soften-
ing of the brain; that the plaintiff was unconscious
for several days. After the danger of inflammation
disappeared, he left the case in charge of the family
physician. He was in attendance on the patient for
eight or ten days. The family physician testified that
he attended the plaintiff five or six weeks. He was in
a comatose condition three or four days. That he suf-
fered a great deal, and required constant attention dur-
ing his entire illness. That blood discharged from one
of his ears. Has been called to see him several times
since to treat him for severe headache, vomiting and
inflammation of the left ear. That his complaints were
attributable to the injury received, and its duration
would likely last through life. That plaintiff was a
very healthy man before he received the injury. He
attended him three weeks prior to the trial. He was
vomiting and blood oozing from his ear. The general
result in cases of this kind is weakness of mind or
epilepsy. Dr. Larrabee was then recalled, and stated
that the symptons stated by the family physician ren-
dered the probability of epilepsy stronger. These state-
ments made by skilled surgeons and physicians, uncon-

tradicted by any proof in the record, was the testimony upon which this verdict was based, and if true, and there is no reason for doubting them, the verdict of the jury is fully sustained by the evidence, and looking to the general and special instructions on the question of damages, we are satisfied the response merely to the question propounded, that he had a wife and three children, did not enhance the damages or prejudice the substantial rights of the parties.

The next question arises as to the special findings by which the jury required the one defendant to pay of the damages sustained two thousand dollars and the other three thousand dollars. The jury had said that the plaintiff was entitled to recover five thousand dollars, and if, as is maintained by counsel for both defendants, they had no right to apportion this sum between the wrong-doers, then the reversal, if had, would only require the court below to enter a joint judgment for the five thousand dollars, the whole of which might be recovered of one, with no right of contribution against the other. It is urged, however, by the Central Passenger Company, that the judgment requires it to pay one thousand dollars more than the Louisville and Nashville Railroad Company, and the court having no right to enter such a judgment, it should be reversed. Without determining its effect upon the substantial rights of the parties in the event the damages could not be severed, and such was the common law rule on the subject, we will proceed to determine the question made as to the act of 1839. That act provides: "That in actions of trespass it shall be lawful for the jury to assess several or joint

damages against the several defendants, and when the jury find several damages, the judgment shall be in favor of the plaintiff, against each defendant, for the several damages, and a joint judgment for costs.''

This act, which has been held to apply to all kinds of trespasses, and that modifies the rule of the common law, and is more a question of practice than of right, has not been repealed, expressly or by implication, by either the Revised or General Statutes, or by the Code of Practice. There is no provision of the Code of Practice with regard to the remedy in conflict or inconsistent with the provisions of the act of 1839, nor any provision of the General Statutes in conflict with or inconsistent with its provisions or title that treats of this subject.

This statute affords a remedy against all joint trespassers, with the right on the part of the jury to punish the wrong-doer to the extent of his participation in the wrongful act; and if one is the more guilty than the other, to punish him the more severely. It is an equitable statute, and in this case it is exemplified by punishing the one more severely whose duty it was to stop until the train passed, and who could have avoided the danger by the exercise of the slightest care.

We are the less reluctant to recognize the validity of the act of 1839, as it in no manner affects the rights of these parties, as a reversal because of the damages being severed would only result in directing a joint judgment against the two defendants for the real amount of damages assessed. (Ferguson v. Terry, 1 B. M., 96; Henry v. Sennett, 3 B. M., 311; Cox v. Cook, 1 J. J. M., 360; Rochester v. Anderson, 1 Bibb, 439.)

Judgment affirmed.