CASE 46—ACTION FOR PERSONAL INJURIES—APRIL 25.

# Chesapeake & O. Ry. Co v. Gunter.

APPEAL FROM FRANKLIN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

NEGLIGENCE AT PUBLIC CROSSINGS—INSTRUCTIONS TO JURY—CONTRIBUTORY NEGLIGENCE—FAILURE TO HAVE FLAGMAN AT CROSSING—FAILURE OF RAILROAD COMMISSIONERS TO REQUIRE FLAGMAN.

Held: 1. Where it was alleged in the petition that plaintiff was thrown from the buggy by reason of her horse becoming frightened at defendant's train at a public crossing, and that no signal of the approach of the train was given, the court should by its instructions have directed the attention of the jury to the question whether plaintiff's horse became frightened by reason of defendant's negligence in failing to give warning of the train's approach, and not merely to the question whether defendant's agents "carelessly and negligently frightened the plaintiff's horse."

2. The court should have instructed the jury that it was plaintiff's duty to exercise such care as an ordinarily prudent person would exercise under similar circumstances, and should not have told them that it was her duty to use ordinary care, "by looking and listening for said train," as the court thereby took from the jury the right to say that the failure to stop was want of ordinary care, as they might have done if they found that the crossing was an exceptionally dangerous one.

3. It was error to instruct the jury that, if the crossing was an exceptionally dangerous one, it was the duty of defendant to

keep a watchman at such crossing, or to use some other "effective" means to warn travelers of the approach of trains, as the law does not require that the means adopted shall prove effective, but only that they shall be such as an ordinarily prudent person operating a railroad would adopt under like circumstances.

4. The failure of the railroad commissioners to require a flagman at a crossing within one mile of the corporate limits of an incorporated city or town, as they may do under Kentucky Statutes, section 774, does not relieve the company from the charge of negligence in failing to have a flagman, where the situation is such that common prudence requires the precaution to be taken; and such failure on the part of the commissioners is not even admissible to show due care on the part of the company.

5. The care required of the railroad company must be commensurate with the danger. Where it has created an extraordinary danger it is required to exercise extraordinary care; and what is due care in a particular case must depend upon the existing circumstances at the time of the injury and it is a question for the jury to decide.

IRA JULIAN and JOHN T. SHELBY Attorneys for Appellant.

JAS. ANDREW SCOTT for Appellee

(No briefs in record.)

Opinion of the court by JUDGE DURELLE—Reversing.

Appellee, who is a woman sixty-seven years old, obtained a verdict of $1,000 damages for injuries sustained by her by jumping or being thrown from her buggy by reason of her horse becoming frightened at appellant's passenger train at Walcutt's crossing; it being averred that no signal or warning of the approach of the train was given, and that the crossing at which the accident occurred was exceptionally dangerous, by reason of the railroad making a sharp curve there, and passing through a cut just before reaching the pike. The evidence as to whether a signal was given by the engine at the crossing is conflicting, as it is, also, in the question whether appellee used proper care in approaching the crossing. She testifies that she

stopped and listened on approaching the crossing, but heard no signal of any kind, and is confident that none was given. Two young men, however, who were driving in a surrey just ahead of her, testify that when they reached the crossing they heard the whistle, whipped up their horse in order to get across before the train, and signa'ed to appellee not to come on, but that she did not stop until their signal was given.

It is objected that the jury were not properly instructed. The objections urged to instructions one and two are possibly cured by the fourth instruction; but we think that the attention of the jury should have been directed, in those instructions, to the question whether appellee's horse became frightened by reason of appellant's negligence in failing to give warning of the approach of the train, and should not have merely directed their attention to the question whether appellant's agents "carelessly and negligently frightened the plaintiff's horse, causing it to throw her from the buggy," etc. The fourth instruction, after stating the duty of the employes in charge of the train to give notice by bell or whistle, continues: "The law also imposed upon the plaintiff, when crossing said crossing, to use ordinary care to ascertain the approach of such train, by looking and listening for said train, and, unless she did so use ordinary care to ascertain the approach of said train, she was guilty of contributory negligence, and the verdict ought to be for the defendant." This is objected to, because, having required appellee to use ordinary care to ascertain the approach of the train, it does not define "ordinary care," except by erroneously limiting the amount of care which, under the circumstances of this case, would be ordinary. We are of the opinion that the court should have told the jury that it

was plaintiff's duty to exercise such care as an ordinarily prudent person would exercise under similar circumstances to ascertain the approach of trains, and that it should not have limited the degree of care required by the words "by looking and listening for said train." These words, in effect, notified the jury that, under the circumstances in this case, it was not required that plaintiff should stop, in order to constitute ordinary care on her part. What constitutes ordinary care is, we think, a question for the jury, under the circumstances of the case on trial. The amount of care which an ordinarily prudent person would exercise is to be determined by the circumstances of the particular case. What would be ordinary care in one case might be gross negligence in another. At a crossing in a level stretch of country, where an uninterrupted view could be had for a long distance in either direction, it might not be necessary to either stop or listen, in order to exercise ordinary care; but at an exceptionally dangerous crossing, such as the jury found this crossing to be, a much greater degree of care would be required, to constitute ordinary care, and the jury might be justified in concluding that ordinary care required the plaintiff to stop and look and listen. It seems to us, therefore, that it was error to instruct the jury that it was plaintiff's duty "to use ordinary care to ascertain the approach of such train, by looking and listening," because that instruction told them that it was her duty to look and listen, only, and not to stop. 2 Thomp. Neg. 1235, section 10.

The fifth instruction told the jury that, if they believed that Walcutt's crossing was "an exceptionally dangerous crossing it was the duty of the defendant to keep a watchman at such crossing, or to use some other effective means

to warn travelers of the approach of its trains to said crossing, and the failure to do so was negligence on the part of the defendant. . . ." This was, we think, a peremptory instruction to find for plaintiff if the jury believed that crossing was exceptionally dangerous. It required the company to adopt means which should be actually effective to warn the traveling public of the approach of trains. The company was required only to use such means to give warning of the approach of trains as, considering the character of the crossing, were reasonably sufficient to warn travelers of the approach of trains; and the jury are the judges of the reasonable sufficiency of the means actually employed. Whether the means employed were reasonably sufficient, under the circumstances of this case, and considering the nature of the crossing, and the physical conformation of the country surrounding it (that is, whether they were such as an ordinarily prudent person operating a railroad would have adopted under like circumstances), was a question for the jury to decide under proper instructions. It is not required by the law that the means adopted should prove effective.

It is objected that the court struck out of defendant's answer an averment that the railroad commissioners had not notified the railroad company—as they might have done, under sections 773, 774, Kentucky Statutes, if in their opinion, the public interests required it—to erect gates or keep a flagman there, though the crossing was within a mile of the corporate limits. This was not error. The care required of the company must be commensurate with the danger. Where it has created an extraordinary danger, it is required to exercise extraordinary care; and what is due care in the particular case must depend upon the existing state of

circumstances at the time of the injury, and it is a question for the jury to decide. In some States it has been held that, where it is the statutory duty of railroad commissioners to determine the necessity for a flagman at a crossing, the failure to have a flagman could not be shown, as evidence of negligence, if no order requiring one had been made by the commissioners. Battishill v. Humphery (Mich.) 31 N. W. 894. This doctrine has, however, been doubted. 2 Wood, R. R. 1314. The better doctrine seems to be that, if there is unusual danger at a crossing, it may be negligence not to provide a flagman, watchman, or the like, though there is no statutory requirement. Railway Co. v. Kuhn, 86 Ky. 578, [6 S. W. 441.] Section 774, Kentucky Statutes, provides that whenever, in the opinion of the railroad commissioners, the public necessity requires it, they shall notify any railroad company to erect a gate or keep a flagman stationed at any highway and railroad crossing within one mile of the corporate limits of any incorporated city or town. But the failure of the commissioners to require such precaution does not relieve the company from the charge of negligence, if the situation of the crossing and the circumstances surrounding it are such that common prudence requires the precaution to be taken. Nor do we think such failure on the part of the commissioners is even evidential to show due care on the part of the railroad company. We think this is supported by the reasoning in the opinion in Railroad Co. v. Dalton (Ky.) 43 S. W. 431: For the reasons given, the judgment is reversed, and the cause remanded, with directions to award appellant a new trial, and for further proceedings consistent herewith.