## Appalachian Stave Co. v. Pickard.

(Decided Oct. 15, 1935.)

GOLDEN, LAY & GOLDEN for appellant.

H. H. OWENS and V. A. JORDAN for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Charles Pickard recovered a judgment for $10,127 against the Appalachian Stave Company for injuries received by him in an automobile accident and the company has appealed, assigning a number of errors as grounds for reversal.

In appellant's brief these alleged errors are discussed under twelve headings and numerous subheadings, but they may be summarized as follows: (1) Refusal of the trial court to exclude evidence tending to show that defendant carried indemnity insurance; (2) plaintiff's evidence is so at variance with well-known physical and mechanical laws as to warrant a directed verdict for defendant; (3) improper and prejudicial remarks made and questions asked by the trial judge; (4) improper conduct of the plaintiff's attorney in his closing argument to the jury; (5) admission of incompetent evidence; and (6) erroneous instructions.

Pickard was injured on the night of December 1, 1933, while driving an automobile owned by W. M. Bruener. At the time of the accident John Green and Josh Lickliter were riding in the automobile with him, and Hasten Spivey had gotten out of the car a few hundred feet from the point where the accident occurred. Pickard testified that he drove down a hill and as he approached a bridge, and while on a fill eight or ten feet high, saw the headlights on a car approaching from the opposite direction. This car came around a curve and was to the left of the center of the road in the direction in which it was traveling, and in order to pass it he drove his car as far as possible to the right, the two right wheels being off the macadamized part of the road and on the berm which was eighteen inches wide and composed of dirt. After running forty or fifty feet in this position, at a speed of about ten miles an hour, his car was struck by the approaching car, which was a truck owned by appellant and loaded with staves. The bed of the truck struck the door of the car Pickard was

driving and seemed to pull his car toward the center of the road. The left front wheel of his car was broken down, the left front fender broken off, and the left runningboard was mashed up against the side of the car. Pickard's left arm was crushed, and he was taken to the hospital and it was amputated six and one-half inches above the elbow.

Lickliter and Green, who were riding in the car with Pickard, testified to substantially the same facts. Lickliter signed a statement at the scene of the accident within an hour after it occurred, in which he said that he was in the front seat of Pickard's car when it ran into the truck, and that it was traveling at a speed of about twenty miles an hour. There was a cloud of dust and he could see the lights on the truck, but on account of the dust he could not see the side of the road. Pickard's car was on the truck's side of the road and the truck was to the right of the center of the road in the direction in which it was traveling, and if Pickard's car had been on the right side of the road, the two cars would have passed without a collision. At the trial Lickliter admitted that the signature on the statement was his, but he denied that he read the statement or that it was read to him before he signed it. He also testified that after the accident he saw the tracks made by Pickard's car on the berm of the road, extending back a distance of seventy feet from the point where it stopped.

Demps King testified that he was at the place of the accident about forty minutes after it happened and that he saw tracks on the dirt extending back from Pickard's car twenty-five or thirty feet. At least six witnesses were introduced who went to the place of the accident on the following day. They testified that they saw the imprint of an automobile tire in the dirt on the right side of the road at the point where Pickard claimed he drove his car.

Robert Viall, an officer of the Appalachian Stave Company, who lived in Barbourville, received notice of the accident and, accompanied by Mr. Kenneth Tuggle, went to the place of the accident about thirty minutes after it occurred and before either car had been moved. He found the truck parked on the right side of the road in the direction it had been traveling, with the right wheels on the dirt. The truck had dual wheels and the

imprints in the dirt made by the tires extended back along the edge of the bank on the extreme right side of the road beyond the point where the collision occurred. Pickard's car had stopped at an angle of forty-five degrees across the road, the front part extending about two feet to the left of the center of the road. The tracks made by his car could be traced back to the place of the accident, and showed that the left wheels were two feet to the left of the center of the road at that point. Mr. Tuggle, Jim Prichard, who was driving the truck, and a number of other witnesses who were present before the cars were moved testified substantially to the same facts. Viall also testified that when he went to the place of the accident he drove his automobile along the extreme right side of the road to a point immediately to the rear of Pickard's wrecked car with the right wheels on the dirt berm.

Hasten Spivey rode in Pickard's car to a point a few hundred yards from the place of the accident, and he testified that he smelled whisky when he got into the car at the bridge over the Cumberland river at Barbourville. Pickard began driving so recklessly that the witness requested him not to drive so fast and finally asked him to stop and let him out. Arthur Peace saw the Pickard car pass along the road a few hundred feet from the place of the accident, and it was traveling at a speed of about forty-five miles an hour. He heard the crash and was the first person to arrive at the scene of the accident. He corroborated Viall, Tuggle, Prichard, and other witnesses who testified that the tracks made by the two cars and the marks on the surface of the road indicated that the collision occurred to the left of the center of the road in the direction in which Pickard's car was traveling.

Appellant's theory of the case is supported by the great weight of the evidence, but there was sufficient proof to the contrary to make an issue for the jury. It is argued that appellee's testimony as to the manner in which the accident occurred is improbable and contrary to the physical facts and should have been disregarded. This argument is based on the theory that if Pickard's car had been struck by a heavy truck in the manner and at the place described by him, it would not have remained on the road but would have been knocked over the embankment. According to plaintiff's testi-

mony, the left front wheel of his car was crushed and when the axle dropped to the ground the car was pulled to the left. There is no evidence that such a result is improbable.

The plaintiff introduced a number of witnesses who testified that they went to the scene of the accident on the following day and saw the imprint made by an automobile tire in the dirt at the point where the plaintiff claimed he drove his car when the accident occurred. There was evidence that a number of automobiles had passed back and forth along the road in the meantime, and there was also evidence that at least one or two automobiles had been driven along the extreme right side of the road at this point traveling from the direction of Barbourville. There was no evidence to show that the conditions had remained the same from the time of the accident until these witnesses made their observations on the following day, or that there were any distinguishing marks or circumstances by which the track seen by them could be identified as one having been made by Pickard's car. This evidence under the circumstances was incompetent and should have been excluded.

Where a condition is permanent, such as a defect in a road, its existence at the time in issue may be inferred by its subsequent existence, but subsequent existence of a temporary condition, such as tracks on a dusty and much traveled road, is not evidential where considerable time has intervened and there is no showing that the condition has remained the same in the interval.

Instruction A reads:

"If the jury shall believe from the evidence that at the time and place shown in the evidence that plaintiff Pickard was driving the automobile owned by Mr. Breuner on the right side of the center line of the highway, in the direction of travel and while exercising ordinary care for his own safety and the safety of other persons and vehicles using said highway and a truck owned by the defendant company was negligently and carelessly driven over the right of the center line of the highway, in the direction in whch it was being operated and thereby caused to strike the automobile driven by the plaintiff Pickard, then your verdict will be for the plain-

tiff. Unless you so believe, your verdict will be for the defendant company.''

The court, no doubt, intended to tell the jury to find for the plaintiff if it believed from the evidence that the accident was caused by the negligence of the defendant's employee in driving the truck to the left of the center line of the highway in the direction in which it was being operated, but the language used authorized the jury to find for the plaintiff although it believed the truck was on the right side of the road. It is argued that when the instructions are read as a whole, the jury could not have been misled, but the facts are close and the issue as to the position of the truck relative to the center line of the highway was a vital one in the case. It was essential that the jury be accurately instructed on this pivotal point, and conceding for present purposes that the law was correctly stated in other instructions, this court cannot know which instructions the jury followed. Wilder v. Bailey, 233 Ky. 238, 25 S. W. (2d) 381; Equitable Life Assurance Society of United States v. McDaniel, 223 Ky. 505, 3 S. W. (2d) 1093; Anderson's Adm'r v. Granville Coal Co., 205 Ky. 111, 265 S. W. 472; Ferguson v. Fox's Adm'r, 1 Metc. 83. The instruction complained of virtually nullified appellant's defense, and we are unable to say the error did not mislead the jury and was not prejudicial.

In view of our conclusion that the judgment must be reversed for the reasons indicated, it is unnecessary to discuss the other errors assigned by appellant since they are unlikely to occur on another trial.

Judgment reversed.