**MOUNTAIN PETROLEUM COMPANY,**
Appellant,

v.

Asa HOWARD, Administrator of the Estate of Cecil Howard, Deceased, Appellee.

Court of Appeals of Kentucky.

Nov. 10, 1961.

W. A. Johnson, Paintsville, for appellant.

W. W. Burchett, Prestonsburg, G. C. Perry, III, Paintsville, for appellee.

STEWART, Judge.

Plaintiff, Asa Howard, as administrator, recovered a judgment of $10,000 from defendant, Mountain Petroleum Company, for the wrongful death of his son, Cecil Howard (herein referred to as "Howard"). This appeal is prosecuted by defendant on

the theory that it should have been granted a directed verdict when it moved therefor at the conclusion of plaintiff's evidence. We shall refer to the parties hereinafter as "plaintiff" and "defendant."

Howard was struck and killed by defendant's tractor-trailer tank truck on U. S. Highway 23 in Johnson County on November 30, 1957, at approximately 3:30 a. m. Dennie Ratliff, an employee of defendant who was operating the truck, was proceeding in a northerly direction towards Lowmansville. Howard was on foot when he collided with the truck.

Plaintiff undertook to establish by the location near the highway of certain articles of clothing and other personal effects of his son, and by the presence of skid marks that ran from the truck's right of way over to the other side of the pavement, that Howard was not in the truck's lane of traffic when he was hit. Plaintiff went to the place where his son was killed and, although it was sometime in the afternoon when he arrived there, he was permitted to voice this theory as to his son's position on the hard surface when he received the impact:

"I saw his shoe and his cap, and his flashlight, and his flashlight batteries, and the glass from his flashlight laying on the left-hand side, about four foot out in the grass, back behind where he said—where Ratliff said— he hit him; looked like about ten feet back behind where he said he had hit him, on the left-hand side, and looked like skids come from over to the right, and then slid back to the left."

Later on he was again allowed to surmise, as a result of examining certain skid marks, which side of the highway his son was on when he was struck. This portion of his testimony follows:

"Q. Could you tell from observing these skid marks which side of the road that truck was on at the time it hit your son? A. Why—

"Q. I said, could you tell from observing the skid marks, which side of the road the truck was on at the time it struck your son and killed him? A. Yes, sir. The skid marks started about eight or ten feet from where the flashlight and the batteries were laying, and his shoe and cap.

"Q. Was that on the truck's left-hand side, or right-hand side—A. On the left as you go toward Lowmansville."

Maude Dye, Howard's employer during his last days, and a witness who appeared in plaintiff's behalf, stated she accompanied the latter on that same afternoon to the site of the accident. After telling about seeing Howard's shoe, cap, flashlight, the batteries from it, and some pieces of headlight glass in the grass along the side of the highway, she was asked as regards certain skid marks she viewed and this is the testimony on that point:

"Q. Did you see any skid marks? A. Yes, I did.

"Q. Go ahead and describe the skid marks. A. Well, looked like he had stepped on the brakes, and the car—the truck—had went from the right side of the road to the left side. There were skid marks on the concrete, looked like he had stepped on the brakes and went over there to where we found the cap and shoe.

"Q. Do you mean the marks led over to where you found the cap and the shoe—the skid marks? A. Well, almost."

Dennie Ratliff, defendant's truck driver, in giving his version of the accident, testified he had just come around a sharp curve at which place, in meeting an oncoming car, he had dimmed his lights and was headed along a straight stretch traveling at a speed of 35 to 40 miles per hour. Suddenly, without warning, a figure darted out of the darkness onto the highway directly in the path of the truck, about two

or three feet from the edge of the black top. This person was no more than eight or ten feet from Ratliff when he first came into vision. He immediately cut to the left and applied his brakes in an attempt to avoid striking the man. However, he was unable to do so and the right front of the truck struck the man and carried him a distance of some 140 feet to the left side of the highway. The broken glass of his headlight was deposited on the right side of the road. The man, later identified as Howard, was killed instantly. The driver, Ratliff, was the only eyewitness.

A state patrolman, Jack Music, arrived at the place of the accident at 4:00 a. m., which was about one-half hour after it had occurred, and proceeded to make a detailed investigation. He found the right headlight of the truck was broken out and that crushed glass from it was strewn along the right side of the highway, about four or five feet from the berm. From the point where the glass was deposited he traced the skid marks 140 feet, which was 50 feet past where Howard was found. The skid marks started on the truck's right side and ended on its left.

U. S. Highway 23 is a heavily traveled road. By the time plaintiff and Maude Dye arrived in the afternoon (the exact hour was not fixed) at the point where the collision purportedly occurred, at least 8 or 9 hours had elapsed. It will be recalled that Howard was hit and fatally hurt at 3:30 a. m. The record contains no evidence which reveals that the conditions had remained the same from the moment of the accident until these witnesses made their observations, or that there were any distinguishing marks or special circumstances by which the skid marks seen by them could be identified as those made by the truck.

■ The principle is well established in this jurisdiction that the subsequent existence of a temporary condition, such as tracks or debris on a much-traveled road, is not admissible as evidence where consider-able time has intervened and there is no showing that the condition has remained the same in the interval. See Appalachian Stave Co. v. Pickard, 260 Ky. 720, 86 S.W. 2d 685. In Powell v. Commercial Standard Ins. Co., 294 Ky. 7, 170 S.W.2d 857, it was held that the testimony of a witness who reached the scene of the accident four hours thereafter, which testimony purported to explain the marks he saw upon a much-traveled highway, was inadmissible in the absence of a showing that the conditions were the same when the witness arrived as when the accident occurred. See also Arnett v. Dalton, Ky., 257 S.W.2d 585.

■ In the present case plaintiff and Maude Dye, over defendant's objection, testified in respect to skid marks they noticed on the pavement and drew certain deductions from them as to where on the pavement Howard had been hit, but they offered no evidence to show that these marks were made by the truck at the time of the accident. However, conceding arguendo these marks were produced by the truck on the occasion of the mishap, these witnesses could only testify as to the *facts* concerning them, such as their general direction, their length and their starting and stopping points. Plaintiff could not properly postulate, as the trial court gave him leave to do, which side of the pavement the truck was on at the instant of the impact as a result of his examination of certain unexplained tire tracks that went from the truck's side of the highway to the left side thereof. His statement in this connection amounted to nothing more than a speculation or conclusion based upon conjecture. Any inference that might be drawn from his evidence as to where the truck was traveling on the highway when his son was killed was solely a jury matter.

■ The rule is a witness must testify to information within his knowledge, and he should not be allowed to advance an opinion in regard to any facts he may state. See Springfield Fire & Marine Ins. Co. v. Ramey, 245 Ky. 367, 53 S.W.2d 560, and

Coker v. Coker, 216 Ky. 669, 288 S.W. 291. In 32 C.J.S., Evidence, sec. 567, pp. 380–381, it is stated: "Mere opinions or conclusions of an unskilled witness, without adequate supporting facts, possess little or no probative value, and have been held insufficient to authorize or sustain a verdict, decree, award, or finding, or to warrant submission of the issue to the jury. So an opinion based on speculation or conjecture is of no probative force and is insufficient to support a verdict or finding."

Thus, it would appear beyond any doubt that the testimony introduced in behalf of plaintiff, for the reasons shown, does not rise to the dignity of evidence that has any probative value. It rests entirely upon certain undetermined physical facts and certain unwarranted assumptions inferred therefrom which, when evaluated by the tests laid down, would not authorize the submission of this case to the jury. In the very recent opinion of Steely v. Hancock, Ky., 340 S.W.2d 467, 470, we said: " * * We do not hold that physical evidence, standing alone and uncontradicted by other evidence, must in the absolute sense be 'conclusive' in order to support a case, but certainly it must substantially support a definite conclusion, excluding all reasonable conflicting hypotheses." We believe plaintiff's proof completely failed to establish "a definite conclusion" as to where Howard was on the highway when he was hit.

Appellee contends, however, appellant's truck was being operated at the time in a negligent manner because there was a failure to comply with KRS 189.040(3). This subsection provides that motor vehicle lights, on low beam, must project forward so as to reveal persons and vehicles for a distance of at least 100 feet ahead.

■■ It is the rule that, although one may be guilty of negligence per se as a consequence of the violation of a statutory provision, a party will not be entitled to recover for an injury unless the violation is the proximate cause. See Milliken v. Union Light, Heat & Power Co., Ky., 341 S.W.2d 261. Nevertheless, even if we assume KRS 189.040(3) was violated, plaintiff does not show wherein the failure to have the truck lights on bright played any part as a causative factor in this accident.

Other points are raised which our decision of this case renders unnecessary to answer. We are of the opinion appellant was entitled to have its motion for a directed verdict sustained. As a motion for judgment notwithstanding the verdict was properly made, upon the remand of this case judgment will be entered for defendant.

Wherefore, the judgment is reversed.