**Nathaniel D. SMITH, Plaintiff–Appellant,**

v.

**TOYOTA MOTOR CORPORATION;**
**Toyota Motor Sales, USA, Inc.,**
**Defendants–Appellees.**

No. 01–6585.

United States Court of Appeals,
Sixth Circuit.

July 14, 2004.

Jonathan S. King, Central City, KY, William R. Garmer, Savage, Garmer & Elliott, Lexington, KY, for Plaintiff–Appellant.

David T. Schaefer, Woodward, Hobson & Fulton, Louisville, KY, James W. Halbrooks, David W. Graves, Bowman & Brooke, Minneapolis, MN, for Defendants–Appellees.

Before BOGGS, Chief Judge; BATCHELDER and SUTTON, Circuit Judges.

BATCHELDER, Circuit Judge.

Nathaniel Smith appeals the judgment entered on the jury's verdict in favor of

the defendants, Toyota Motor Corporation and Toyota Motor Sales, USA, Inc. ("Toyota"), and the orders of the trial court denying Smith's motions in limine in this product liability action. We AFFIRM the orders and the judgment.

This product liability action stems from a one-vehicle accident that occurred on May 5, 1999, in Muhlenberg County, Kentucky. Plaintiff Nathaniel Smith and his friend, Rodney Dunn, were the only occupants of the 1998 Toyota Tacoma pickup truck involved in the accident. Smith was driving the truck on Highway 81, "the Levee Road," in the rain. Smith inadvertently dropped the right wheels of the truck off the pavement, and as he attempted to bring the vehicle back up onto the roadway, the rear tires slid down the steep slippery slope to the right. The truck rolled over several times before finally coming to rest on its wheels. By all accounts, the roof of the truck was crushed at least nine inches on the driver's side. Smith was found still belted into the driver's seat; his head appearing to be pinned down by the vehicle's crushed roof. He suffered injuries to his cervical vertebrae, severe hematoma to his spinal cord, and a tearing of ligaments and tendons, and remains a permanent quadriplegic who requires caregiver assistance on a daily basis.

Smith brought this product liability action against Toyota on January 25, 2000, alleging that the Tacoma had been defectively designed and manufactured, and that those defects had caused him serious injury. Before trial, Smith filed a "Plaintiff's Admission of Fault," stating that he had been at fault for "causing the wheels on the right side of the vehicle to drop off the pavement." Smith also filed motions in limine requesting, among other things, that the trial court: (1) exclude any evidence of his drinking alcoholic beverages on the day of the accident; (2) exclude from the jury instructions any comparative fault instruction; and (3) exclude any evidence regarding a log and shards of window glass found at the scene of the accident by Toyota's experts 16 months after the accident occurred. The trial court overruled each of these motions.

The case went to trial on Smith's claims that his injuries were the result of defects in the design of the Tacoma, namely, that the Tacoma had a rollover propensity greater than that of the average vehicle and that, in light of that propensity, the Tacoma's roof structure was not adequate to protect the occupants of the vehicle in a rollover accident. Toyota contended that Smith's injuries were not caused by any defect in the roof design, and that a stiffer roof structure would not have prevented Smith's injuries. At the conclusion of a three-week trial, the jury found that Smith's injuries were not caused by a product defect. The jury therefore did not reach the instructions concerning apportionment of fault.

On appeal, Smith claims that the district court erred in (1) overruling his motion in limine to exclude evidence of his drinking on the day of the accident; (2) overruling his motion to preclude instructions on the apportionment of fault, as well as to preclude evidence of Smith's negligence under the "second collision" or "enhancement of injury" theory; and (3) overruling his motion in limine to preclude the evidence of a log and window glass found at the scene 16 months after the accident.

I.

The district court noted that evidence of Smith's alcohol consumption would be relevant only if Toyota were entitled to a jury instruction on apportionment of fault. We think that the court was entirely correct, and for that reason, we will first address

Smith's claim that the district court erred in denying his motion to preclude any apportionment of fault instruction and any evidence of Smith's negligence.

Smith posits that comparative fault is not an issue in "crashworthiness" or "enhancement of injury" cases, and that apportionment of fault should therefore not apply to the present case. Whether Kentucky law requires a finding of comparative negligence in tort cases is a question of law, which we review de novo. *See United States v. Al–Zubaidy,* 283 F.3d 804, 810 (6th Cir.2002).

■ The district court correctly found that under Kentucky law, an apportionment instruction is required in all tort actions, including product liability actions. Kentucky law specifically requires that "[i]n *all* tort actions, *including product liability actions,* . . . the court . . . shall instruct the jury to answer interrogatories . . . indicating: [T]he percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section." K.R.S. § 411.182(1) (emphasis added). Section 411.182 clearly indicates that an apportionment of fault is required in all tort actions, including product liability actions.

Smith suggests that a recent Kentucky Supreme Court decision "casts doubt" on the proposition that apportionment is required in all fact situations. He cites *Degener v. Hall Contracting Corp.,* 27 S.W.3d 775 (Ky.2000), for the proposition that where parties are not acting in concert, "[the] pre-KRS 411.182, analysis of primary and secondary fault should be made and apportionment should not apply." Smith's reliance on *Degener* is severely misplaced. The issue in *Degener* was the availability of common-law indemnity, a form of recovery not sought in the present case. *See id.* at 776–77. Nothing in *Degener* affects either the meaning of K.R.S. § 411.182 or the outcome in the present case. In fact, the *Degener* court cited Section 411.182 with approval:

> [B]ecause the liability is several as to each joint tortfeasor, it is necessary to apportion a specific share of the total liability to each of them . . . the several liability of each joint tortfeasor with respect to the judgment is limited by the extent of his/her fault. With some additional adjustments, KRS 411.182 is simply a codification of this common law evolution of the procedure for determining the respective liabilities of joint tortfeasors.

*Id.* at 779 (internal citation omitted).

Smith's appeal to the "legal philosophy of an enhanced injury case" notwithstanding, Kentucky law requires apportionment of fault in all tort cases, including product liability cases such as this one. The district court did not err in overruling Smith's motion to preclude instructions on apportionment of fault.

## II.

Smith claims that the district court erred in denying his motion in limine and in admitting, over his objection, evidence of his alcohol consumption prior to the accident. Smith contends that (1) his alcohol consumption is not relevant in a "crashworthiness" claim, (2) the probative value of this evidence is substantially outweighed by its prejudicial effect, and (3) his judicial admission of fault in causing the rollover has eliminated the need to produce evidence of alcohol consumption.

Although we review the factual components of a district court's evidentiary determinations under an abuse of discretion standard, *see United States v. Rios,* 842 F.2d 868, 874 (6th Cir.1988), we review the

legal components of those determinations de novo. *Miller v. Field,* 35 F.3d 1088, 1090 (6th Cir.1994) (citing *United States v. Levy,* 904 F.2d 1026, 1029 (6th Cir.1990)).

■ Smith first argues, as he did before the district court, that under a crashworthiness claim the defective product (in this case the allegedly defective roof), and not the rollover accident itself, caused the injuries. "It is enough if the design defect increased the damages. So any participation by the plaintiff in bringing the accident about is quite beside the point." *Reed v. Chrysler Corp.,* 494 N.W.2d 224, 230 (Iowa 1992). Noting that *Reed*'s approach is contrary to the Kentucky apportionment statute, the majority of the caselaw that examines the issue, and the position taken by the Restatement (Third) of Torts, the district court effectively refuted this argument:

> Comparative causation is especially appropriate in crashworthiness cases where the product defect causes or enhances injuries but does not cause the accident.... [I]t is a *combination* of factors that causes plaintiff's injuries. The jury is asked to apportion responsibility between all whose action or products combined to cause the entirety of the plaintiff's injuries.

District Court Mem. Op. & Order, Oct. 17, 2001, at 5–6 (quoting *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 428 (Tex. 1984)). The district court went on to point out that *Reed*'s premise "divorces the accident from reality—of course the initial collision is a proximate cause of the enhanced injuries, for if there had been no initial collision, there would be no enhanced injuries." *Id.* at 5. Evidence of a plaintiff's negligence, the court said, is necessary for the jury to evaluate the extent of the plaintiff's fault in causing his own injuries.

■ Smith contends that his judicial admission of fault in causing the wheels to drop off the pavement, combined with his repeated statements to the court that he had already admitted fault in precipitating the accident, eliminated the need for Toyota to submit proof on the subject of his negligence or other fault. Although we have found that judicial admissions generally end the need to submit proof on the subject of the admission, *see, e.g., Barnes v. Owens–Corning Fiberglas Corp.,* 201 F.3d 815, 829 (6th Cir.2000), the evidence of Smith's drinking is made relevant by K.R.S. § 411.182. As we noted above, under Kentucky law, an apportionment instruction is required in all tort actions, including product liability actions. *See* K.R.S. § 411.182(1). Kentucky law requires, moreover, that "[i]n determining the percentages of fault, the trier of fact shall consider both the *nature of the conduct* of each party at fault *and the extent of the causal relation* between the conduct and the damages claimed." K.R.S. § 411.182(2) (emphasis added). This broad statute requires the trier of fact to consider evidence which, in other circumstances, might not have been admissible. Under Section 411.182(2), Smith's admission did not resolve all issues of his fault.

We note, for example, that Smith's brief in support of his motion in limine specifically charged that the Tacoma truck had a high rollover propensity, and that "in the face of this high rollover propensity, the roof structure is inadequate to protect the occupants during a rollover." Evidence of Smith's alcohol use was relevant to this rollover propensity claim, and was necessary to permit the jury to evaluate fully the nature of his conduct and how his conduct led to his injuries, which in turn was necessary to permit the jury to determine comparative fault for his injuries.

■ Smith also contends that the prejudicial effect of the alcohol evidence out-

weighed its probative value. *See* Fed. R.Evid. 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). Trial courts have broad discretion in deciding the issue of admissibility under Fed.R.Evid. 403. A district court's decision is reviewed for an abuse of discretion, giving the "evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Laney v. Celotex Corp.*, 901 F.2d 1319, 1320–21 (6th Cir.1990). The evidence of Smith's drinking has probative value under Kentucky law, which requires the trier of fact to consider fully "the nature of the conduct of each party at fault." K.R.S. § 411.182(2). While some of the testimony at trial may have been prejudicial (for example, references to other persons' drinking and behavior that were unrelated to the accident), we are not convinced that such testimony so thoroughly tainted the trial as to render it inadmissable. The district court did not abuse its broad discretion by finding that the prejudicial effect of the alcohol-related evidence did not outweigh its probative value.

## III.

Smith's last claim is that the trial court improperly admitted evidence of broken glass and an imbedded log found at the accident scene by Toyota's reconstructionist, Dr. Greg Smith. The glass and log were significant items of evidence which Dr. Smith connected to this accident and which supported his reconstruction opinion that the pickup rolled over three times. This was an important part of Toyota's defense, first, because a three-roll accident is very rare and involves much more force than a two-roll accident, and second, the

roof's striking the log could have caused the truck's roof rail to buckle. The plaintiff argued that such evidence should not be admitted because it was found 16 months after the accident occurred, and Dr. Smith could not clearly establish that the conditions at the scene had remained unchanged. The district court overruled plaintiff's motion, reasoning that such factors go to the weight, but not the admissibility, of the evidence.

■ The evidence of the log and broken glass was admitted as part of Dr. Smith's expert testimony, and is therefore subject to Fed.R.Evid. 702. We review a district court's decision to admit or exclude expert testimony only for an abuse of discretion. *General Electric Co. v. Joiner*, 522 U.S. 136, 139, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). The district court did not abuse its discretion in admitting Dr. Smith's testimony and factual assertions regarding his reconstruction of the accident.

Dr. Smith is an experienced and highly credentialed reconstructionist who has worked on many rollover accidents. His reconstruction indicated that the Tacoma rolled over a total of three times, coming to rest on all four wheels. The at-rest position was established by photographs taken by Trooper Combs of the Kentucky State Police at the scene of the accident, before the Tacoma was moved. The point where the Tacoma left the roadway was also established by photographs taken by Trooper Combs on the night of the accident. Dr. Smith personally worked at the scene of the accident for two days in September 2000, inspecting and mapping the Tacoma's off-road travel path.

Starting at the known and undisputed point of rest, Dr. Smith and his assistant worked back toward the point where the Tacoma left the road, searching for physical evidence left by the Tacoma during the

rollover sequence. He cut away heavy foliage in order to get to the bare ground, and found broken glass, plastic trim pieces, and indentations in the soil directly along the rollover path. At a location which, in Dr. Smith's opinion, would have been the two and three-quarter roll position (the point where the truck would have been three-quarters of the way through the third roll), Dr. Smith found a five-to-six-inch diameter log imbedded in the soil, as well as a large deposit of broken glass. The physical evidence was carefully documented by photographs and mapping. Dr. Smith relied on this evidence to testify that, in his opinion, the driver's side window frame landed on the log, buckling the roof rail and the driver's side window frame, and shattering the driver's side window glass. Toyota's design expert, Thomas Tiede, agreed that the buckling of the roof and window frame was consistent with damage from a log or similar object.

In arguing that this evidence should have been excluded, the plaintiff relies primarily upon two Kentucky common-law cases, *Appalachian Stave Co. v. Pickard*, 260 Ky. 720, 86 S.W.2d 685 (1935), and *Mountain Petroleum Co. v. Howard*, 351 S.W.2d 178 (Ky.1961), for the proposition that "the subsequent existence of a temporary condition, such as tracks or debris on a much-traveled road, is not admissible as evidence where considerable time has intervened and there is no showing that the condition has remained the same in the interval." *Mountain Petroleum*, 351 S.W.2d at 180. Those cases involved evidence of a fleeting and temporary nature, presented by lay witnesses, not experts. In *Pickard*, the plaintiff sought to introduce testimony from a lay witness who saw an automobile tire imprint in the dirt at the side of the road near where the accident occurred. *See Pickard*, 86 S.W.2d at 867. *Mountain Petroleum* involved skid marks noticed by witnesses on the road

surface a number of hours after the accident. *See Mountain Petroleum*, 351 S.W.2d at 180.

Durable evidence is handled differently from the tire imprints and skid marks in *Pickard* and *Mountain Petroleum*. In *Southern Oxygen Co. v. Martin*, 291 Ky. 238, 163 S.W.2d 459, 461 (1942), the Kentucky Court of Appeals held that gouge marks "were of such permanency as to take this evidence without the rule" enunciated in *Pickard*. The *Pickard* opinion itself makes it clear that "[w]here a condition is permanent ... its existence at the time in issue may be inferred by its subsequent existence." *Pickard*, 86 S.W.2d at 687. Toyota correctly notes that the evidence of the log and glass is more like the gouge marks in *Southern Oxygen* than the skid marks in *Mountain Petroleum*. The imbedded log and glass deposit found by Dr. Smith are not temporary conditions, but tangible, durable evidence which is not easily disrupted and not degraded or altered by the passage of time. Importantly, the scene where the evidence was found was on the lower portion of a steep slope off the side of a rural roadway, well away from passing traffic.

The district court did not abuse its discretion in admitting the evidence of the log and the broken glass. Dr. Smith's testimony regarding the log and glass was based on facts and data, all of which were documented by photographs and diagrams. *See* Fed.R.Evid. 702. Even the plaintiff's expert agreed that Dr. Smith's findings were the product of an accepted methodology in reconstructing rollover accidents. The evidence is of unquestioned relevance—it is probative on the issues of how and why the roof deformation occurred. Concerns about the fact that Dr. Smith did not examine the scene for a full 16 months following the accident go to the weight of Dr. Smith's testimony, not its admissibili-

ty. Opposing counsel had the opportunity to cross examine Dr. Smith on his testimony, and did so vigorously. The district court did not abuse its discretion in admitting this evidence.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.