## Louisville Railway Co. v. Louisville Taxicab & Transfer Co.

(Decided Jan. 23, 1934.)

(As Modified on Denial of Rehearing Dec. 18, 1934.)

PETER, LEE, TABB, KRIEGER & HEYBURN for appellant.

ROBERT PAGE and WOODWARD, HAMILTON & HOBSON for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

In April, 1929, a baggage truck belonging to the Louisville Taxicab & Transfer Company, hereinafter referred to as the transfer company or appellee, was left standing on the south side of Walnut street near the baggage entrance to the Seelbach Hotel in Louisville, Ky. The back end of the truck extended so far into the street as to leave insufficient space for the passage of street cars over the east-bound tracks. Shortly after the truck was left so standing, it was struck by a street car of the Louisville Railway Company, hereinafter called the railway company or appellant, and was knocked forward, striking and injuring Mrs. Bertha Reno, who had stepped out into the street preparatory to boarding a street car. The railway company entered into a compromise agreement with Mrs. Reno whereby it paid her the sum of $3,500 in settlement of its liability growing out of the accident.

Thereafter she instituted suit against the transfer company seeking damages for the injuries sustained in the accident and recovered judgment for the sum of $10,500, subject to credit by $3,500, the amount paid her by the railway company, which on appeal to this court was affirmed. See Louisville Taxicab & Transfer Company v. Reno, 237 Ky. 452, 35 S. W. (2d) 902, 904. The transfer company paid this judgment, which, with interest, amounted to $7,473.73, and also $165.05 as costs of the action. It also settled a suit which W. R. Reno, husband of Bertha Reno, had brought for loss of her services due to her injuries by payment of $516 in satisfaction of the claim for damages and the costs of the action.

The transfer company instituted this action against the railway company to recover the sum of $8,138.78 the total amount which it had been required to pay in settlement of the suits of Mr. and Mrs. Reno against it, and alleged that the accident and the loss and damage resulting to it as a consequence of the accident was due solely and entirely to the negligent operation of the street railway company's street car.

In an amended petition, the plaintiff reiterated and amplified the allegations of the original petition, and prayed recovery for the full amount sought therein, but further prayed that, if it should be adjudged that it was not entitled to recover this sum, it recover by way of contribution from defendant one-half of such sum, subject to a credit of $3,500 which defendant had paid to Mrs. Reno under the compromise agreement.

In a subsequent amendment, it prayed that, if it be adjudged that defendant was not indebted to it in the full sum sued for, it be adjudged that it recover of defendant that proportion of such sum which represented the negligence of defendant's motorman in relation to all the negligence operating to bring about the injuries to Mrs. Reno.

The railway company by answer traversed the allegations of the petition, and in a second paragraph set up certain affirmative defenses. The court sustained a demurrer to this, but, since no question is made as to the propriety of the court's ruling on the demurrer, it will be unnecessary to consider this portion of the answer. By amended answer and counterclaim, the railway company alleged that the accident out of which Mrs. Reno's injuries grew was due solely to the negligence of the transfer company; that the compromise under which it paid her $3,500 was reasonable and proper settlement under the circumstances as between the parties thereto, and it asked recovery against plaintiff for that amount, but it further asked that, if it should be adjudged that the accident was not due solely to the negligence of plaintiff, but that defendant also was guilty of some negligence, then in that event that plaintiff be required to contribute to it under the provisions of section 484a, Ky. Stats., such sum as might appear proper under the proven circumstances of the case.

At the close of all the evidence, the jury, at the di-

rection of the court, returned a verdict in favor of the transfer company for the full amount sued for; however, the court, on hearing and consideration of the railway company's motion for a new trial, remitted $6,386.32 as representing the difference between what the railway would be required to pay under the judgment and the sum it should be required to pay as equal contribution between the parties, and therefore adjudged that plaintiff recover of defendant the sum of $2,439.49, with interest from October 5, 1932. The defendant is prosecuting an appeal, and plaintiff is prosecuting a cross-appeal.

Only a brief statement of facts in evidence will be necessary, since there is an extensive review of the evidence with the attending facts, circumstances, and surrounding conditions in the case of Louisville Taxicab & Transfer Company v. Reno, supra, in which the evidence is in all material details similar to the evidence here.

Bert Jones, the colored driver operating appellee's truck, had left the Kentucky Hotel and proceeded east to the Seelbach for the purpose of taking up baggage for an outgoing train. The street car was going in the same direction. The driver of the truck testified that another truck belonging to appellee was standing on the south side of Walnut street near the baggage entrance to the Seelbach; that he pulled up with the intention of backing his truck to the baggage entrance. His evidence indicates that he looked back and saw the street car approaching and decided that at the rate it was coming it could not stop before it struck his truck. He therefore stopped his motor, jumped out of the truck, and ran over to the baggage entrance. The evidence of the motorman operating the street car is to the effect that he saw the truck as he approached the scene of the accident and thought there was sufficient space to pass in safety, but that he miscalculated the distance, and the street car struck the truck.

Apart from the evidence of the driver of the truck and motorman, only one witness goes into detail as to what occurred immediately before and at the time of the accident. John Gardner, a witness introduced by appellee, testified that he was driving west on Walnut street and was stopped at the intersection of Fourth and Walnut by the traffic light. We take the following excerpt from his direct examination.

"Q. 8. Tell the jury what you saw. A. The light came on at Fourth and Walnut, and I stopped.

"Q. 9. Which direction were you going? A. I was going west.

"Q. 10. All right; go ahead. A. And the car had left Fifth and Walnut.

"Q. 11. What car had already left Fifth and Walnut? A. The car going east.

"Q. 12. The street car? A. Yes sir; and it got along there by the Seelbach Hotel and it passed one truck and it struck the other, and there was some ladies standing out there on the edge of the walk and one stepped down, and when she stepped down the street car struck the truck and knocked the truck up on the lady.

"Q. 13. Now, where was the driver of this truck? A. The truck driver? I can't say for sure, but it looked like something come out of that truck out of the front of that truck, when the car struck it; and I saw a fellow standing at the door of the Seelbach, and he said he jumped out, and I asked him if that was him coming out there, and he said 'Yes.' That is what I asked him at that time.

"Q. 14. Now was the truck in motion or standing still at the time? A. It wasn't even running. The motor was shut off on the truck. There wasn't nothing moving but the street car, and it was raining that afternoon, and the man tried to put on his brakes and the wheels slid—the car wheels slid.

"Q. 15. What man tried to put on his brakes? A. The man running the street car.

"Q. 16. Did you see him try to put his brakes on? A. Yes sir: he was trying to do something to the car—I don't know what you call it— put his brakes on or reverse it or something, and the thing hit the truck.

"Q. 17. Did the street car skid? A. Yes sir: it kind of slid. You could hear it make a noise, the wheels. The truck was sticking out, and it hit the corner that way and pushed it.

"Q. 18. You say the motor was not running? A. The truck was dead still; not even running at all. There wasn't nothing moving but the street car."

The following appears on cross-examination:

"Q. 24. [Mr. Lee resumes]: You said you saw something coming off of the truck at the time the street car hit? A. I seen something jump out or come out of there; and I asked the fellow when I got up there—

"Q. 25. Did it look like it was a man? A. Yes sir: a brown-skinned fellow, it was, and he had on a jumper jacket, and he said he jumped out of the truck. I said, 'Oh, was you in that?' He said, 'Do you think I was going to get killed?' I said, 'I didn't know you was working for the cab people.' "

While some of the statements made by the motorman would indicate that he misjudged the distance of the truck from the street car tracks and that the accident would not have occurred but for this error of judgment upon his part, the case does not turn on his evidence alone, but necessarily must be governed by all the evidence. The evidence of the driver of the truck indicates that he abandoned it knowing it was in the path of an on-coming street car. There is evidence that he did not set the brakes and nothing to indicate that he gave warning of his intention to stop or that there was anything to prevent him from moving his truck to a place of safety.

The quoted excerpt from Gardner's evidence tends to establish that Jones suddenly jumped from the truck and left it standing in the path of the street car which was in such close proximity that it could not stop, even though the brakes were applied so forceably as to lock the wheels. The evidence establishes beyond question that both the motorman and the driver of the truck were guilty of negligence, and that the negligence of each contributed to the injuries sustained by Mrs. Reno, and in the proven facts and circumstances it is impossible to determine any difference in the quality or degree of their negligence.

In the case of the Louisville Taxicab & Transfer Company v. Reno, supra, the court, after pointing out the care imposed by law upon the employees of the respective parties and their failure to observe such duties, said:

"The truck and the street car were two agencies acting entirely independent of each other, and

jointly and concurrently were the cause of the injury. It would not have happened except for the concurrence at approximately the same time and place of the two negligent acts."

In the case of Middlesboro Home Telephone Company and Tri-State Telephone Company v. L. & N. Ry. Co., 214 Ky. 822, 284 S. W. 104, which was decided before chapter 190, Acts 1926, Ky. Stats. sec. 484a, became effective, it was held in effect that recovery over will not be allowed as between joint tort-feasors where they are in pari delicto; and that was the common-law rule which had theretofore prevailed in this and many other jurisdictions. See, also, City of Louisville v. Louisville Ry. Co., 156 Ky. 141, 160 S. W. 771, 49 L. R. A. (N. S.) 350; Owensboro City Ry. Co. v. L., H. & St. L. Ry. Co., 165 Ky. 683, 178 S. W. 1043. Section 484a of the Statutes reads:

"That contribution among wrong doers may be enforced where the wrong is a mere act of negligence and involves no moral turpitude."

Clearly it was the intention of the Legislature in enacting this section to abrogate the common-law rule as announced in the Middlesboro Home Telephone Case, and it has been so interpreted by this court. Consolidated Coach Corporation v. Burge, 245 Ky. 631, 54 S. W. (2d) 16, 85 A. L. R. 1086.

Long before the adoption of section 484a of the Statutes, there were well-recognized exceptions to the general rule as enunciated in the above-cited cases which, as said in Robertson v. City of Paducah, 146 Ky. 188, 142 S. W. 370, 371, 40 L. R. A. (N. S.) 1153, quoting from Cooley on Torts:

"Rest upon reasons at least as forcible as those which support the rule itself."

The opinion in that case continuing quotes from Geneva v. Brush Electric Co., 50 Hun, 581, 3 N. Y. S. 595, respecting recovery between tort-feasors wherein it is said:

"The cases in which recovery over is permitted in favor of one who has been compelled to respond to the party injured are exceptions to the general rule, and are based upon principles of equity. Such exceptions obtain in two classes of cases: [1] Where the party claiming indemnity has not been guilty

of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or [2] where both parties have been in fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury."

See, also, City of Georgetown v. Cantrill, 158 Ky. 379, 164 S. W. 929; City of Georgetown v. Groff, 136 Ky. 662, 124 S. W. 888; Ill. Central Ry. Co. v. Louisville Bridge Company, 171 Ky. 445, 188 S. W. 476. The statute authorizing contribution among joint tort-feasors made no change in the rule or exception respecting indemnity. From what has been said in the case of Louisville Taxicab & Transfer Co. v. Reno, supra, and which clearly appears from our recital of the proven facts and circumstances, it is manifest that the lower court did not err in determining as a matter of law that this case falls within the rule promulgated by the statute and is not a case where the exception to the general rule applies.

Wherefore the judgment is affirmed on both the original and cross appeals.

Whole court sitting.