Adam DEGENER, Appellant,

v.

HALL CONTRACTING
CORPORATION,
Appellee.

Mauricio Salazar, M.D., Appellant,

v.

Korp II Limited Partnership
d/b/a Dupont Surgery
Center, Appellee.

Nos. 1998–SC–0353–DG,
1998–SC–0506–DG.

Supreme Court of Kentucky.

May 18, 2000.

Rehearing Denied Oct. 26, 2000.

Lawrence Irwin Young, Louisville, for Appellant Adam Degener (1998–SC–0353–DG).

John W. Phillips, Boehl, Stopher & Graves, William P. Swain, Phillips, Parker, Orberson & Moore, P.L.C., Louisville, for Appellee Hall Contracting Corporation (1998–SC–0353–DG).

Alex Talbott, McMurry & Talbott, Louisville, for Appellant Mauricio Salazar, M.D. (1998–SC–0506–DG).

John O. Sheller, Smith & Smith, Louisville, for Appellee Korp II Limited Partnership d/b/a Dupont Surgery Center (1998–SC–0506–DG).

Opinion of the Court by Justice COOPER.

We granted discretionary review in each of the captioned cases primarily to address whether claims for common law indemnity have survived the advent of comparative negligence and apportioned liability under *Orr v. Coleman,* Ky., 455 S.W.2d 59 (1970), *Hilen v. Hays,* Ky., 673 S.W.2d 713 (1984), *Dix & Assocs. Pipeline Contractors, Inc.*

*v. Key,* Ky., 799 S.W.2d 24 (1990), and KRS 411.182. Since the issue is common to both cases, we will address it in a single opinion. We will also address whether the indemnity claim asserted in *Degener v. Hall Contracting Corp.* is barred by limitations and whether the indemnity claim asserted in *Salazar v. Korp II Ltd. Partnership, etc.,* is barred because the original complaint asserted only a cause of action under Kentucky's Civil Rights Act, which creates a right of action only against employers and not against non-employer perpetrators such as Salazar.

## I. DEGENER v. HALL CONTRACTING CORP.

Adam Degener and Eagle Tye allegedly constructed a homemade bomb using dynamite stolen from Hall Contracting Corporation. On November 17, 1991, three police officers, Dawn Smith, Michael Johnson and Deborah Marasa, were injured when the bomb exploded while they were attempting to disarm it. On July 2, 1992, the officers filed suit against Hall Contracting in the Jefferson Circuit Court, alleging that Hall had "negligently, carelessly and recklessly stored dynamite in a container which failed to meet industry standards in that the container storing said dynamite was not theft proof." On February 25, 1994, Hall was granted a summary judgment premised upon the so-called "firefighter's rule." *Sallee v. GTE South, Inc.,* Ky., 839 S.W.2d 277 (1992); *Hawkins v. Sunmark Indus., Inc.,* Ky., 727 S.W.2d 397 (1986). The Court of Appeals reversed and remanded in an unpublished opinion which became final on December 14, 1995. On March 20, 1996, Hall Contracting filed a third-party complaint against Degener and Tye for indemnity for any amounts which it might be required to pay to the three injured officers. Tye was never served with process. Degener's subsequent motion to dismiss the third-party complaint was granted on the bases that: (1) the claim for indemnity was barred by the one-year statute of limitations applicable to personal injury actions, KRS 413.140(1)(a); and (2) the advent of comparative negligence and apportionment of fault has eliminated claims for common law indemnity except in a case of vicarious liability or where one party has contracted to be liable for the torts of another, citing *Kevin Tucker & Assocs., Inc. v. Scott & Ritter, Inc.,* Ky.App., 842 S.W.2d 873 (1992). The Court of Appeals reversed as to both issues and remanded for a decision on the merits of Hall's indemnity claim. Hall has settled the claims filed against it by the three officers, so the only remaining issue is its indemnity claim against Degener.

## II. SALAZAR v. KORP II LIMITED PARTNERSHIP, ETC.

Korp II Limited Partnership owns and operates an outpatient surgery clinic in Louisville, Kentucky. Appellant Mauricio Salazar is a licensed physician with staff privileges to perform surgeries at the clinic. Jill E. Townsend was employed by Korp II as a scrub technician and was assigned to assist Salazar in the performance of his surgeries. Townsend filed suit against Korp II in the Jefferson Circuit Court alleging a violation of the Kentucky Civil Rights Act and seeking damages for "hostile work environment" harassment alleged to have been perpetrated against her by Salazar.[1] KRS 344.040(1); KRS 344.450; *Meyers v. Chapman Printing Co., Inc., supra* n. 1, at 820–23. In her discovery deposition, Townsend described occasions when Salazar pulled her down on his lap, placed his hands on her breasts, placed his arm around her, touched her buttocks, rubbed his hand

---

1. In her deposition, Townsend described sundry other alleged discriminatory acts perpetrated against her by other staff physicians and employees of Korp II. However, she testified that her claim for compensation in this action was based solely on the actions of Salazar. She did not assert a claim of gender-based discharge. *Meyers v. Chapman Printing Co., Inc.,* Ky., 840 S.W.2d 814, 820, 823–24 (1992).

against her abdomen, and held her hand behind her back in such a fashion that she could not pull away from him.

Korp II filed a third-party complaint for indemnity against Salazar. The trial judge dismissed the third-party complaint on grounds that KRS 344.450 creates a cause of action only against an employer and does not provide a civil remedy against an individual perpetrator who is not the plaintiff's employer. In a 2–1 decision, the Court of Appeals reversed and remanded, holding that while a claim for contribution has essentially been abolished by KRS 411.182, Korp II has a viable claim for common law indemnity against Salazar for any damages it might have to pay to Townsend. Like Hall Contracting, Korp II has settled the claim filed against it by Townsend, so the only remaining issue is Korp II's indemnity claim against Salazar.

\* \* \*

While it is common practice for tort defendants to file third-party complaints seeking "indemnity and/or contribution," these two concepts represent separate and distinct remedies which have different historical origins and are applicable to completely different fact situations.

## III. CONTRIBUTION AND APPORTIONMENT.

■ The right to contribution arises when two or more joint tortfeasors are guilty of concurrent negligence of substantially the same character which converges to cause the plaintiff's damages. In that scenario, the tortfeasors are said to be "in pari delicto." *Lexington Country Club v. Stevenson*, Ky., 390 S.W.2d 137, 143 (1965). The common law rule was that each joint tortfeasor was entirely responsible for the plaintiff's single indivisible injury "because it was thought that the injury could not be divided into parts to determine the responsibility of each negligent actor." *Dix &*

*Assocs. Pipeline Contractors, Inc. v. Key, supra,* at 27. If the plaintiff sued all of the joint tortfeasors and each was found to be at fault and in pari delicto with the others, the plaintiff could recover the entire judgment against all or any one of them. 18 Am.Jur.2d *Contribution* § 40 (1985). If one defendant satisfied the entire judgment, he had no common law right to contribution from another jointly liable defendant. *Id.* Most jurisdictions, including Kentucky, have abrogated this unjust principle by statute. Kentucky has three statutes applicable to claims against or between joint tortfeasors, *viz:* KRS 454.040, KRS 412.030, and KRS 411.182.

KRS 454.040 provides:

In actions of trespass the jury may assess joint or several damages against the defendants. When the jury finds several damages, the judgment shall be in favor of the plaintiff against each defendant for the several damages, without regard to the amount of damages claimed in the petition, and shall include a joint judgment for the costs.

This provision was first enacted in 1839.[2] In *Ferguson v. Terry*, 40 Ky. (1 B. Mon.) 96 (1840), the statute was held to "authorize[ ] several verdicts to be found, and several judgments to be entered against each of several *joint* trespassers in a *joint* action." *Id.* (emphasis in original). In *Central Passenger Ry. Co. v. Kuhn*, 86 Ky. 578, 6 S.W. 441 (1888), the statute was recognized as a modification of the common law and was held to apply to all types of trespasses, including negligence actions. "This statute affords a remedy against all joint trespassers, with the right on the part of the jury to punish the wrong-doer to the extent of his participation in the wrongful act, and, if one is the more guilty than the other, to punish him the more severely." *Id.*, 6 S.W. at 447. However, the statute only affected the plaintiff's right of recovery and did not purport to create a right of contribution between or among the joint tortfeasors.

**2.** 1839 Ky. Acts ch. 1214 § 2.

In 1926, the General Assembly enacted what is now KRS 412.030,[3] which permits contribution among wrongdoers "where the wrong is a mere act of negligence and involves no moral turpitude." The enactment of this statute permitted one who had satisfied a negligence claim to assert a claim for contribution in a separate action against a joint tortfeasor. *Consolidated Coach Corp. v. Burge*, 245 Ky. 631, 54 S.W.2d 16 (1932). The subsequent adoption of the Kentucky Rules of Civil Procedure allowed the claim to be presented in the same action by way of either a cross-claim, CR 13.07, or a third-party complaint, CR 14.01. *Jackson & Church Div., York–Shipley, Inc. v. Miller*, Ky., 414 S.W.2d 893 (1967); *Elpers v. Kimbel*, Ky., 366 S.W.2d 157, 161 (1963). The measure of contribution for a joint judgment was pro rata, or one-half of the amount of the judgment (or out-of-court settlement) in the case of two joint tortfeasors. *Consolidated Coach Corp. v. Burge, supra*, 54 S.W.2d at 18–19. Finally, a joint tortfeasor could not recover contribution from one against whom the person injured by the tort had no cause of action. *Id.*, 54 S.W.2d at 17.

The first Kentucky case requiring apportionment of causation between or among joint tortfeasors was *Orr v. Coleman, supra*. There, the plaintiff settled with one joint tortfeasor for $19,000 and went to trial against the other. The jury returned a verdict for $22,000, but did not indicate whether the verdict represented the plaintiff's total damages against which the $19,000 would be credited pursuant to, *e.g.*, *McCallum·v. Harris*, Ky., 379 S.W.2d 438, 442, 444 (1964), or whether it represented the non-settling tortfeasor's share of a $41,000 verdict pursuant to KRS 454.040. On appeal, it was held that the jury should have been instructed to determine the total amount of damages to be awarded to the plaintiff and to fix the percentages of causation attributable to each joint tortfeasor. Under this procedure, the plaintiff received the benefit of her bargain with the settling tortfeasor and the non-settling tortfeasor was liable for a portion of the total damages no greater (nor less) than that which correlated with the percentage of causation attributable to her negligence. The Court also noted that this procedure obviated any question of or necessity for a claim for contribution. *Orr v. Coleman, supra*, at 61.

When *Hilen v. Hays, supra*, held that a contributorily negligent plaintiff could recover that portion of his/her total damages which correlated with the percentage of causation attributable to the defendant(s), *i.e.*, comparative negligence, the stage was set for the series of decisions which culminated in *Dix & Assocs. Pipeline Contractors, Inc. v. Key, supra*. As summarized in *Dix*, liability among joint tortfeasors in negligence cases is no longer joint and several, but is several only; and because the liability is several as to each joint tortfeasor, it is necessary to apportion a specific share of the total liability to each of them, whether joined in the original complaint or by third-party complaint, and the several liability of each joint tortfeasor with respect to the judgment is limited by the extent of his/her fault. *Id.*, 799 S.W.2d at 27–28. With some additional adjustments, KRS 411.182 is simply a codification of this common law evolution of the procedure for determining the respective liabilities of joint tortfeasors. Although as first noted in *Orr v.. Coleman, supra*, the apportionment of causation and the requirement of several liability obviates any claim for contribution among joint tortfeasors whose respective liabilities are determined in the original action, we do not address here the viability of a claim for contribution against other joint tortfeasors who were not parties to that action. *See* KRS 411.182(4) and *Copass v. Monroe County Medical Found., Inc.*, Ky.App., 900 S.W.2d 617 (1995).

---

**3.** 1926 Ky. Acts ch. 190 p. 877.

## IV. INDEMNITY.

■ Unlike the right to contribution, the right to indemnity is of common law origin and is available to one exposed to liability because of the wrongful act of another with whom he/she is not in pari delicto.

"The cases in which recovery over is permitted in favor of one who has been compelled to respond to the party injured are exceptions to the general rule, and are based upon principles of equity. Such exceptions obtain in two classes of cases: (1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury."

*Louisville Ry. Co. v. Louisville Taxicab & Transfer Co.*, 256 Ky. 827, 77 S.W.2d 36, 39 (1934) (quoting *Trustees of Village of Geneva v. Brush Elec. Co.*, 3 N.Y.S. 595, 596 (N.Y.Sup.Ct.1889)). The primary Kentucky precedent on this issue remains *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 311 Ky. 396, 224 S.W.2d 165 (1949), in which the hotel company, which had been held liable for injuries sustained by a pedestrian who was injured in an encounter with an unsecured manhole lid on the hotel's property,[4] was held entitled to indemnity against the fuel company, whose employee had left the lid unsecured after unloading a delivery of coal into the manhole. The entitlement to indemnity was held to have been unaffected by the enactment of the statute authorizing contribution between or among joint tortfeasors in pari delicto.

An Act of 1926, now Kentucky Revised Statutes 412.030 ... made no change in the exception which allows the right of indemnity where the person seeking it and the person from whom it is sought are not in pari delicto, as where the party who was compelled to pay the damages was less culpable than the other wrongdoer, although both were equally liable to the person injured. . . . Where one of two parties does an act or creates a hazard and the other, while not concurrently joining in the act, is, nevertheless, thereby exposed to liability to the person injured, or was only technically or constructively at fault, as from the failure to perform some legal duty of inspection and remedying the hazard, the party who was the active wrongdoer or primarily negligent can be compelled to make good to the other any loss he sustained.

*Id.*, 224 S.W.2d at 166–67 (gathering cases); *see also Lexington Country Club v. Stevenson, supra*, at 143 ["a right to total *indemnity* may exist if the joint tort feasors (sic) are not in pari delicto and the party *secondarily* negligent asserts a claim against the one *primarily* negligent" (emphasis in original) ]; Restatement (First) of Restitution § 97. As with a claim for contribution, a claim for indemnity need not await payment of the liability on which indemnity is sought but may be asserted in the original tort action. *Robert F. Simmons Constr. Co., Inc. v. American States Ins. Co.*, Ky., 426 S.W.2d 441, 443–44 (1968).

■ To summarize, apportionment of liability arose from statutory provisions permitting contribution and several liability among joint tortfeasors in pari delicto. It has no application to the common law right of a constructively or secondarily liable party to total indemnity from the primarily liable party with whom he/she is not in pari delicto. Appellants' reliance on *Dix & Assocs. Pipeline Contractors, Inc. v. Key, supra, Prudential Life Ins. Co. v. Moody*, Ky., 696 S.W.2d 503 (1985), *Roman Catholic Diocese of Covington v. Secter*, Ky.

---

4. *Brown Hotel Co. v. Sizemore*, 303 Ky. 431, 197 S.W.2d 911 (1946).

App., 966 S.W.2d 286 (1998), *Continental Marine, Inc. v. Bayliner Marine Corp.,* Ky.App., 929 S.W.2d 206 (1996), and *Kevin Tucker & Assocs., Inc. v. Scott & Ritter, Inc., supra,* for the proposition that the advent of apportioned liability has eliminated the common law right to indemnity is misplaced. Although there are references in some of those opinions to claims for "contribution and/or indemnity," none of those cases involved claims for indemnity. More importantly, none of those cases specifically hold that the advent of apportioned liability between joint tortfeasors in pari delicto has eliminated the common law right to indemnity vested in one who is only constructively or secondarily liable to a plaintiff. Any language in *Continental Marine, Inc. v. Bayliner Marine Corp.* or *Kevin Tucker & Assocs., Inc. v. Scott & Ritter, Inc.,* both *supra,* which might imply such a holding is expressly disapproved.

## V. RIGHT TO INDEMNITY IN THESE CASES.

 The facts of the cases *sub judice* fall squarely within the parameters of the common law right to indemnity. If the allegations in *Degener v. Hall Contracting Corp.* are true, Degener and Tye were the active wrongdoers and Hall Contracting's liability is premised solely upon its failure to prevent them from making the bomb which injured the three officers. If the allegations in *Salazar v. Korp II Ltd. Partnership, etc.* are true, Salazar was the active wrongdoer and Korp II's liability is premised solely upon its failure to prevent him from sexually assaulting and harassing Townsend. Both cases are factually similar to *Crime Fighters Patrol v. Hiles,* Ky., 740 S.W.2d 936 (1987) in which a customer of a fast food restaurant sued the restaurant for damages sustained when he was assaulted by another customer. The restaurant filed third-party complaints for indemnity against both its security service provider and the perpetrator of the assault; and the security service filed a cross-claim for indemnity against the assailant. The gravamen of the claim against the restaurant was that it knew of the assailant's violent nature and was negligent in failing to prevent the assault. We held that even if the restaurant and the security service were liable for the customer's damages, they were not in pari delicto with the perpetrator of the assault, thus were entitled to complete indemnity against him.[5] Likewise, even if Hall Contracting is liable for damages incurred by the three injured police officers, Hall was not in pari delicto with Degener and Tye, thus would be entitled to complete indemnity against them; and even if Korp II is liable for damages incurred by Townsend, Korp II was not in pari delicto with Salazar, thus would be entitled to complete indemnity against him.

## VI. LIMITATIONS.

 Hall Contracting's third-party complaint for indemnity was filed fifty-two months after the explosion which injured the three police officers and forty-four months after the filing of the original complaint. Degener asserts and the trial court held that the one-year period of limitations set forth in KRS 413.140(1)(a) for "[a]n action for an injury to the person of the plaintiff" bars Hall's third-party complaint for indemnity. However, a claim for indemnity is not a claim in which the claimant seeks damages for his/her own personal injuries, but is one in which the claimant seeks restitution for damages he/she was required to pay for injuries sustained by another and which were entirely

---

**5.** In fact, the customer had settled with his assailant and had executed a release containing a "hold harmless" clause in the assailant's favor. Since the restaurant and the security service were entitled to indemnity against the assailant for any amounts they were required to pay to the customer, and the assailant was entitled to indemnity from the customer for any amounts he was required to pay to the restaurant and/or the security service, the upshot was that the customer was contractually precluded from pursuing his claim against the restaurant and the security service.

or primarily caused by the party against whom indemnity is sought. *Crime Fighters Patrol v. Hiles, supra,* at 939–40. The five-year period of limitations set forth in KRS 413.120(7) for "[a]n action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated" is the applicable period within which to commence an action for common law indemnity. *City of Louisville v. O'Donaghue,* 157 Ky. 243, 162 S.W. 1110 (1914). Thus, Hall Contracting's claim for indemnity against Degener and Tye is not barred by limitations.

## VII. INDEMNITY IN CIVIL RIGHTS ACTIONS.

■ It is of no consequence that KRS 344.040 and KRS 344.450 create a right of action only against employers and, thus, that Townsend could not have brought a civil rights action against Salazar personally. The holding in *Consolidated Coach Corp. v. Burge, supra,* at 17 that a joint tortfeasor cannot enforce contribution against one who could not have been sued by the injured person applies only to a claim for contribution, which arises only when joint tortfeasors are in pari delicto with respect to the plaintiff's injuries. It has no application to a claim for common law indemnity, which arises only when the tortfeasors are *not* in pari delicto and when one party has been exposed to liability because of the wrongful act of another. See, *e.g., Kentucky Utils. Co. v. Jackson County Rural Elec. Coop. Corp.,* Ky., 438 S.W.2d 788 (1968) and *Union Carbide Corp. v. Sweco. Inc.,* Ky.App., 610 S.W.2d 932 (1980), in both of which the party sued by the injured plaintiff was permitted to assert a claim for indemnity against the plaintiff's employer, even though the employer could not have been sued by the plaintiff because of the exclusive remedy provision of the Workers' Compensation Act, KRS 342.690(1).

As noted by the trial judge, a different result obtains in actions brought in federal court under Title VII of the Civil Rights Act of 1964. However, that is not because Title VII creates a different type of cause of action than does KRS Chapter 344. KRS 344 .020; *Mountain Clay, Inc. v. Commonwealth, Comm'n on Human Rights,* Ky.App., 830 S.W.2d 395, 396 (1992). Rather, the different result obtains because there is no common law right to either indemnity or contribution under federal law, and the federal courts have held that those state law remedies cannot be applied to causes of action created by federal statutes. *Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981); *Anderson v. Local Union No. 3, International Bhd. of Elec. Workers,* 751 F.2d 546 (2d. Cir.1984); *Gilmore v. List & Clark Constr. Co.,* 866 F.Supp. 1310 (D.Kan.1994); *compare Biggs v. Surrey Broad. Co.,* 811 P.2d 111 (Okla.Ct.App.1991) (an employer was entitled to indemnity under state law against its employee for amounts paid in settlement of a civil rights claim for sexual harassment and discrimination perpetrated by the employee).

## VIII. CONCLUSION.

Accordingly, the opinions of the Court of Appeals rendered in the captioned cases are affirmed, and each case is remanded to its respective trial court for resolution of the merits of the Appellees' claims for indemnity.

LAMBERT, C.J.; GRAVES, STUMBO and WINTERSHEIMER, JJ., concur.

KELLER, J., dissents by separate opinion, with JOHNSTONE, J., joining that dissent.

KELLER, Justice, Dissenting.

Today's majority opinion effectively overrules *Hilen v. Hays* and its progeny and repeals Kentucky's comparative fault statute, KRS 411.182. I dissent because I believe that the General Assembly deliberately abrogated the common law doctrine of equitable implied indemnity between

joint tortfeasors when it adopted KRS 411.182. Accordingly, I believe the trial court in each of these cases properly dismissed the third party complaint. In addition, I believe the trial judge in *Salazar v. Korp II Ltd. Partnership, etc.,* properly held that Korp II could not maintain an indemnity action against Salazar because an individual perpetrator of sexual harassment who is not the plaintiff's employer has not breached any duty created by KRS 344.450.

## INDEMNITY AND COMPARATIVE FAULT

The general rule at common law provided "that a joint tort feasor who is compelled to pay damages for the negligent or tortious act of another is not entitled to indemnity from the latter," [1] but an exception to this general rule allowed a tortfeasor whose responsibility for a plaintiff's damages was less than that of a joint tortfeasor (or, in the parlance of the common law, who was not *"in pari delicto— equal fault"* with the joint tortfeasor) to obtain complete indemnity from the other party. In *Brown Hotel Co. v. Pittsburgh Fuel Co.,* [2] the predecessor to this Court recognized that KRS 412.030, which authorized contribution among joint tortfeasors in pari delicto, [3] "abrogated the so-called general rule but made no change in the exception which allows a right to indemnity where the person seeking it and the person from whom it is sought are not in pari delicto." [4] The remaining right to indemnity, known generally after the opinion as *"Brown Hotel* indemnity" existed:

> Where one of two parties does an act or creates a hazard and the other, while not concurrently joining in the act, is, never-

theless, thereby exposed to liability to the person injured, or was only technically or constructively at fault, as from the failure to perform some legal duty of inspection and remedying the hazard, the party who was the active wrongdoer or primarily negligent can be compelled to make good to the other any loss he sustained. [5]

This exception "allows the right of indemnity where the person seeking it and the person from whom it is sought are not in pari delicto, as where the party who was compelled to pay the damages was less culpable than the other wrongdoer, although both were equally liable to the person injured." [6] Indemnity among joint tortfeasors did not derive from a statute, "but stands entirely on principles of equity," [7] and is "based upon or spring[s] from the idea of equalization of burden." [8]

In *Hilen v. Hays,* [9] this Court again departed from the common law of this state by discarding contributory negligence in favor of comparative negligence and justified the departure by stating:

> In broad outline, stare decisis directs us to "stand by" our previous decisions unless there are sound legal reasons to the contrary. Every case must be decided with a respect for precedent. But the doctrine of stare decisis does not commit us to the sanctification of ancient fallacy. In *Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1983), the Supreme Court of Iowa observed:
>
>> '(S)tare decisis does not preclude the change. That principle does not require blind imitation of the past or adherence to a rule ... We must reform common law doctrines that are

1. *Brown Hotel Co. v. Pittsburgh Fuel Co.,* 311 Ky. 396, 224 S.W.2d 165, 166 (1949).

2. *Id.*

3. *Id.*

4. *Brown Hotel, supra* note 1 at 166–67.

5. *Id.* at 167.

6. *Id.* at 166.

7. *Id.* at 168.

8. *Brown Hotel Co., supra* note 1 at 168.

9. Ky., 673 S.W.2d 713 (1984).

unsound and unsuited to present conditions.' *Id.* at 753.

The common law is not a stagnant pool, but a moving stream. *City of Louisville v. Chapman*, Ky., 413 S.W.2d 74, 77 (1967). It seeks to purify itself as it flows through time. The common law is our responsibility; the child of the courts. We are responsible for its direction. In *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918), Mr. Justice Brandeis wrote:

> 'The unwritten law possesses capacity for growth; and has often satisfied new demands for justice by invoking analogies or by expanding a rule or principle.' 248 U.S. at 262, 39 S.Ct. at 81.

Mr. Justice Sutherland wrote in *Funk v. United States*, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933):

> '(T)o say that the courts of this country are forever bound to perpetuate such of its rules as, by every reasonable test, are found to be neither wise nor just, because we have once adopted them as suited to our situation and institutions at a particular time, is to deny to the common law in the place of its adoption a 'flexibility and capacity for growth and adaptation' which was 'the peculiar boast and excellence' of the system in the place of its origin.' 290 U.S. at 383, 54 S.Ct. at 216.

The adoption of comparative negligence in *Hilen v. Hays* "was premised upon the principle of fundamental fairness, that liability should be assessed in relation to fault and that the extent of liability should be determined by the extent of the fault."[10] As a result, "when there are joint tort-feasors the liability of either of them is limited by the extent of his fault."[11] This includes original defendants and third-party defendants.[12] "The extent of the liability of each is a several liability and is limited to the degree of fault apportioned to each."[13] "Thus, a defendant's liability is limited to its degree of fault, no more and no less."[14]

The General Assembly codified the holding of *Hilen v. Hays* and its progeny in KRS 411.182:

(1) In all tort actions, including products liability actions, involving fault of more than one party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, shall instruct the jury to answer interrogatories or, if there is no jury, shall make findings indicating:

(a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.

(2) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal connection between the conduct and the damages claimed.

(3) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under subsection (4) of this

---

10. *Dix & Associates v. Key,* Ky., 799 S.W.2d 24 at 27 (1990).

11. *Floyd v. Carlisle Const. Co., Inc.,* Ky., 758 S.W.2d 430, 432 (1988).

12. *Stratton v. Parker,* Ky., 793 S.W.2d 817 (1990); *Dix & Associates v. Key, supra.*

13. *Stratton v. Parker,* Ky., 793 S.W.2d at 820.

14. *Continental Marine v. Bayliner Marine,* Ky. App., 929 S.W.2d 206, 208 (1996).

section, *and shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.*

(4) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against the other persons shall be reduced by the amount of the released persons' equitable share of the obligation, determined in accordance with the provisions of this section.[15]

The writers of one of the best-known treatises on tort law suggested that the adoption of such comparative fault schemes may lead to a paradigmatic shift in the manner in which courts approach indemnity issues:

Changes in the law of contribution and comparative fault may materially alter the context and the equities, thus causing courts to reconsider rules of indemnity. In the past, courts often viewed their choice as one between allocating the whole loss to one of two tortfeasors or dividing it equally between them. Adoption of comparative fault may be seen as creating another option——allocating loss according to percentages. In some contexts, this outcome may appear more equitable than either of the first two. Recognition of this option of percentage allocation has already caused some modification of the law of indemni-

ty, and further modification may be expected.[16]

In fact, some jurisdictions which have faced this issue have found that comparative negligence and comparative fault statutes have abrogated the common law remedy of equitable implied indemnity between "passive" and "active" joint tortfeasors [17] while others have modified their common law to allow only for partial indemnity in proportion to comparative fault.[18] In holding that their legislatures had modified the common law, these courts recognized equitable implied indemnity as "a blunt instrument for reallocating responsibility to damages [which] shifts the entire loss from one culpable wrongdoer to another" [19] and took note of the malleability of the distinction between "active" and "passive" negligence:

With a little ingenuity in phrasing, negligence can be made to be either "active" or "passive" as suits the writer. For example, "driving an automobile with bad brakes" or "running through the stop sign" or "using a defective crane" might be said to be "active" negligence, while "omitting maintenance of brake fluid level" or "neglecting to apply the brakes" or "failing to inspect the crane in order to discover its defectiveness" might be "passive" negligence——these are the same acts or omissions, but the outcome depends not upon the facts, but upon how someone chooses to characterize them.[20]

While labels such as "active" or "passive" are themselves largely indeterminate, questions such as whether one party's negligence is secondary because it arose from the negligence of the other party and

**15.** KRS 411.182 (emphasis added).

**16.** *Prosser and Keeton on Torts,* 5th Edition, § 51 (West Publishing Co.1984).

**17.** *See, e.g., Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362 (Minn.1977); *Cypress Creek Utility Service Company, Inc. v. Muller,* 640 S.W.2d 860 (Tex.1982).

**18.** Woods, *Comparative Fault,* 2nd Edition, § 13:11 Indemnity (Lawyers Co-operative

Publishing Co. 1987); *See also Schneider National Inc. v. Holland Hitch Co.,* 843 P.2d 561 (Wyo.1992).

**19.** *Tolbert supra* note 15 at 367.

**20.** *Schneider National, Inc. supra* note 16 at 574 (citing *Missouri Pac. R. Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466, 471 (Mo.1978)).

would not have arisen but for it and whether the parties were or were not in pari delicto are proper factors to be weighed by the jury in determining the degree of fault apportioned to each party.[21]

The same principles of fundamental fairness that compelled the discarding of contributory negligence in favor of comparative negligence also compels the elimination of indemnity between joint tortfeasors who shoulder unequal fault. The Supreme Court of Minnesota addressed this issue and reasoned that an equitable concept such as implied indemnity exists only to correct unjust enrichment which cannot exist in a comparative fault jurisdiction which has abandoned joint and several liability:

> In the related area of contributory negligence, our legislature has abandoned the all-or-nothing approach of the common law by adopting a comparative negligence statute.... Tortfeasors must now accept responsibility for damages commensurate with their own relative culpability. Because indemnity in [these] situations is an equitable doctrine, we are at liberty to ameliorate the rigid common-law rules in keeping with legislative philosophy without an express statutory mandate.
>
> By limiting the reallocation of loss between joint tortfeasors to contribution based upon relative fault, the more culpable tortfeasor will continue to bear a greater share of the loss, but at the same time his joint tortfeasor will not continue to escape all liability as in the past....
>
> The jury found that both [the defendants] were negligent and that the negligence of each was a direct cause of plaintiff's injury. Consequently, as between them, each will bear the cost of compensating plaintiff in proportion to its relative culpability.[22]

To hold otherwise effectively eviscerates the bedrock upon which KRS 411.182 was built and overrules *Hilen v. Hays* and its progeny. This Court held that "liability should be assessed in relation to fault and ... the extent of liability should be determined by the extent of the fault"[23] because of its faith that juries can properly assess relative degrees of fault and, when appropriate, place the lion's share of liability on the principal wrongdoer. Today's majority withdraws that faith and holds that, even when a jury has determined that a defendant has engaged in tortious conduct and should be responsible for a proportional share of the plaintiff's damages, a tortfeasor may bring an equitable implied indemnity action against a more culpable joint tortfeasor who is "really" responsible for the plaintiff's damages. This holding is plainly inconsistent with KRS 411.182.

Other jurisdictions have chosen to allow plaintiffs to recover only when their own negligence is less than, or equal to, that of a defendant, but under Kentucky's system of fault allocation, a plaintiff may recover even when his responsibility for his damages exceeds that of the defendant or defendants. In other words, a plaintiff who is ninety percent (90%) responsible for his own damages may still recover against a defendant found to be ten percent (10%) liable for those damages. In striking the balance in favor of pure comparative fault, the General Assembly has clearly signaled that the legislature in this state wishes to hold wrongdoers responsible in proportion to their respective percentages of fault.[24] Today's majority opinion not only ignores the General Assembly's plain intent with respect to the comparative fault of joint tortfeasor defendants, but also potentially

---

21. *See, e.g., Schneider National, Inc. supra* note 16 at 578–9 ("[T]he distinctions of "active" and "passive" negligence, while no longer determinative of the ability to seek indemnity, are factors to be weighed by the jury in assessing the percentage of fault of the parties." *Id.*).

22. *Tolbert, supra* note 15 at 367–8.

23. *Dix & Associates v. Key, supra* note 8 at 27.

24. KRS 411.182.

reinstates contributory negligence by, at least theoretically, allowing a "passively negligent" defendant to bring an action for equitable implied indemnity against an "actively negligent" plaintiff.[25]

Today's majority polishes up a relic from days gone by which the courts created to address inequities which arose in the context of a harsh law of tort which held multiple jointly negligent tortfeasors entirely responsible for a single indivisible injury because it was thought that the injury could not be divided into parts to determine the responsibility of each negligent actor. Contribution, while provided for by statute as discussed in the majority opinion, was pro rata only, which was "fundamentally unfair"[26] when the relative liabilities of joint tortfeasors were disproportionate. In this century, Kentucky tort law requires tortious parties to pay for their share of the plaintiff's damages, and only their share of the plaintiff's damages. Equitable implied indemnity is very much an anachronism, and KRS 411.182 properly rendered it extinct.

## INDEMNITY IN CIVIL RIGHTS ACTIONS

Although I have expressed above that I feel that the General Assembly, by adopting KRS 411.182, intended to eliminate the common law action for equitable implied indemnity, I specifically disagree with the majority's holding that an employer against whom an employee has brought a claim of sex-based, hostile workplace employment discrimination may have a *Brown Hotel* equitable implied indemnity claim against an individual sexual harasser. In my opinion, this holding misconstrues the cause of action created by KRS 344.040 and KRS 344.450 and ignores the policy decisions made by the General Assembly which assign direct liability to an employer for acts of employment discrimination.

KRS 344.040 makes it an unlawful practice for an employer:

(1) To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified person with a disability, or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking.

(2) To limit, segregate, or classify employees in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect status as an employee, because of the individual's race, color, religion, national origin, sex or age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking.[27]

KRS 344.450 provides a private right of action for employment discrimination:

Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained, together with the costs of the law suit. The court's order or judgment shall include a reasonable fee for the plaintiff's attorney of record and any other remedies contained in this chapter.[28]

**25.** The language of *Brown Hotel*, after all, does not distinguish between plaintiffs and defendants, but rather refers to the joint negligence of "parties."

**26.** *See Dix & Associates Pipeline Contractors, Inc., supra* note 8 at 27–28.

**27.** KRS 344.040.

**28.** KRS 344.450; *see also Meyers v. Chapman Printing Co., Inc.*, Ky., 840 S.W.2d 814, 819 (1992).

In *Meyers v. Chapman Printing Co., Inc.*,[29] this Court followed the United States Supreme Court's opinion in *Meritor Sav. Bank v. Vinson*[30] and held that sexual harassment creating a hostile or abusive work environment could give rise to a claim under KRS 344.010.

KRS 344.030(2) defines "employer" as:

[A] person who has eight (8) or more employees within the state in each of twenty (20) or more calendar weeks in the current or preceding calendar year and an agent of such person, except for purposes of determining discrimination based on disability, employer means a person engaged in an industry affecting commerce who has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and any agent of that person .... [31]

In *Palmer v. International Association of Machinists and Aerospace Workers*,[32] this Court acknowledged and agreed with the weight of federal authority[33] narrowly interpreting the term "employer" in Title VII of the 1964 Civil Rights Act to preclude liability on the part of individuals and entities who did not strictly meet the definition of employer.[34] While some observers have criticized legislature's decisions to hold employers and not individual perpetrators liable,[35] both Title VII of the Civil Rights Act of 1964 and Kentucky's statutory civil rights provisions hold employers, and only employers, directly liable for sexual discrimination in the workplace.[36] While some jurisdictions have

**29.** *See supra* note 26 at 820–821.

**30.** 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

**31.** KRS 344.030(2).

**32.** Ky., 882 S.W.2d 117 (1994).

**33.** *See, e.g. Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir.1994), cert. denied, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir.1993); *Miller v. Maxwell's International, Inc.*, 991 F.2d 583 (9th Cir.1993), cert. denied 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir.1991).

**34.** *Palmer, supra* note 30 at 119; *see also Effinger v. Philip Morris, Inc.*, 984 F.Supp. 1043 (W.D.Ky.1997).

**35.** See, e.g. Hager, 30 *Conn. Law R.* 375 (1998):

During Jim Crow, many whites viewed physical abuse of blacks as wrong, but found their exclusion from lunch counters excusable. Anti-discrimination law stripped away the prerogative to exclude and soon induced many to condemn what they had once excused. Anti-discrimination law can carry this kind of positive force. It has its proper uses where an entire culture condones a certain kind of group mistreatment. Its vice, however, is to displace moral blame from individuals to cultures. It should not be overused. Anti-discrimination law was needed to dismantle Jim Crow in part because lunch counter exclusion did not invade personhood in a tortious sense and hence was non-actionable, absent anti-discrimination law. But a discrimination model can be superfluous and distracting in explaining the wrongfulness of invading fundamental personal rights. It should be avoided where a paradigm of individualized culpability for recognized moral wrongs already holds sway. A paradigm of the wrongfulness of personal invasion does hold sway and we should assume that it applies to sexual harassment. Its name is tort.

One further problem with the discrimination paradigm for harassment bears highlighting. Lay people I speak with are generally astounded that Title VII harassment liability visits no legal sanction on the actual perpetrator. Though the circuits are split, the majority rule and the sounder reading of congressional intent is that liability lies exclusively against the employer. This outcome, so anomalous to common moral sense, flows naturally from conceptualizing harassment as employment discrimination. The strained and contrived nature of that conceptualization loosens the mooring between harassment law and common sense morals. *Id.*

**36.** *See, e.g.,* 30 U.S.F. L.Rev. 825, 826–827 (1996):

[S]tatutory schemes provide that the employer is directly liable for certain instances of sexual harassment. The doctrine of respondeat superior is known also as vicarious liability, indicating that the employer is lia-

held that individual perpetrators of sexual harassment may still be liable for their actions under the common law of tort or contract,[37] their liability does not stem from a violation of statutory laws against workplace discrimination.

I find it impossible to find room to pigeonhole Korp II's claim against Dr. Salazar within the concept of *Brown Hotel* equitable implied indemnity. The plaintiff in this action brought a claim against Korp II for sexual discrimination by allowing a hostile or abusive workplace to develop. Although the Oklahoma Court of Appeals case cited in the majority addresses the question of indemnity in the context of the employer's vicarious liability, the doctrine of respondeat superior is not implicated by the facts of this case because Dr. Salazar was not an employee of Korp II, and Korp II could not be held vicariously liable for Dr. Salazar's torts. Here, Korp II settled with the plaintiff a claim which alleged that Korp II had committed employment discrimination—a claim of action separate, distinct, and not derivative from any common law tort which Dr. Salazar may have committed. Implied equitable indemnity exists to prevent unjust enrichment. When "two persons are liable in tort to a third person for *the same harm* and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of his liability." [38] Here, if the plaintiff's allegations are taken at face value, both Dr. Salazar and Korp II's actions gave rise to claims for damages, but the claims and damages were distinct, and the plaintiff chose to pursue only the claim against Korp II for employment discrimination under a hostile workplace theory. The fact that Dr. Salazar might have committed a tort against the plaintiff which resulted in a claim for damages does not implicate Korp II's own liability, and does not give rise to a claim for indemnity.

I would also note that strong public policy considerations hesitate against finding that an employer who has settled a claim of, or who has been found liable for, employment discrimination under a hostile workplace theory might have a claim for equitable implied indemnity against an individual perpetrator of sexual harassment. The General Assembly has made the policy decision to create workplace discrimination liability only for employers, and today's majority guts that policy by removing any financial incentive for employers to take any proactive measures aimed at preventing sexual harassment in the workplace such as screening potential employees and supervisors, promptly responding to employee complaints, or adopting policies which clarify the employer's procedures for eliminating sexual harassment. Under the majority's logic, any employer itself found liable for hostile workplace discrimination need only bring an action against the "real" source of sexual harassment. This holding flies in the face of the statute, which places the onus for addressing sexual harassment issues on the employer. The majority opinion poorly serves the public interest by allowing employer wrongdoers to completely shift accountability to others. The General Assembly has made the decision to focus its statutory efforts to reduce employment discrimination on the actions of employers, and today's majority reverses that decision by judicial fiat.

ble not because of its own conduct but because of its relationship to the employee committing the wrongful acts. Vicarious liability, then, is secondary liability. Thus, *an employee who is the victim of sexual harassment need not prove her employer vicariously liable for the harasser-employee's acts, if the statutory requirements for direct liability are met. Id.* (emphasis added).

37. *See, e.g. Id.* at 834 and surrounding notes ("Contract theories under which a plaintiff may sue include breach of the implied covenant of good faith and fair dealing. Available tort causes of action include battery, assault . . ., and intentional infliction of emotional distress. *Id.*)

38. 41 Am.Jur.2d 348 (Indemnity) § 2.

For the reasons outlined above, I would reverse the decision of the Court of Appeals in each case and reinstate the summary judgments entered by the respective trial courts.

JOHNSTONE, J., joins this dissent.